## GUTTMANN v. SCANNELL.

In an action brought by a married woman concerning property belonging to her as a sole trader, under the act of 1852, the husband need not be joined.

So far from forbidding, the law, by the plainest implication, intends that the capital invested by the wife as a sole trader, to the extent of five thousand dollars, may be furnished by the husband.

If the husband at the time was embarrassed, the transfer, as to his creditors, would be fraudulent and void.

The act does not confine sole traders to any particular trade or occupation, nor prohibit the husband from being employed by, or acting for, his wife in the business.

The fact that the business was unsuited to the sex of the wife, and the employment of the husband therein, would be circumstantial evidence tending to establish fraud, but not conclusive evidence of it.

Per Burnett, J., dissenting.—The act of 1852, was designed to secure the rights of the wife as the owner of separate property, and only carries out the intention of the Constitution, which bestows upon the wife the full capacity to own separate property.

The act nowhere says that the property employed by the wife as a sole trader, may be furnished by the husband, and, if so, protected from his creditors. The third section substantially declares that the property invested in the wife's business, must be her separate property.

The fact that the former business of the husband is continued and conducted by him as the agent of his wife, is so pregnant with suspicion, that it should be held conclusive evidence of fraud.

APPEAL from the Superior Court of the City of San Francisco.

The following findings of the Court below, taken in connection with the facts stated in the opinions of the Court, fully explain the case:

1. That for some time past, prior to the first of January, 1856, the husband of the plaintiff was engaged in selling clothing in the city of San Francisco, and was in debt to various persons.

2. That by virtue of judgments obtained against the husband, his entire stock was sold at public auction by the sheriff, about the last of December, 1855, to pay said judgments.

3. That the plaintiff, on the eighteenth day of January, 1856, in conformity to the statute of California, entitled "An act to authorize married women to transact business in their own name as sole traders," passed April 12th, 1852, commenced the

business of selling ready-made clothing in the city of San Francisco, in her own name, and on her own account.

4. That on the twenty-sixth day of February, 1856, the defendant in this case, by virtue of an execution in favor of one Carter, and against the husband of plaintiff, did levy upon and seize the property of plaintiff, and sell the same under execution.

5. That the goods so seized and sold by the sheriff, were exclusively the property of plaintiff, except six hundred and fifty dollars' worth, purchased with the money belonging to her husband, and liable for his debts.

6. That the amount of goods sold by the sheriff belonging to plaintiff, was of the value of eight hundred and fifty dollars, exclusive of the six hundred and fifty dollars, which was liable for her husband's debts; and that, by the acts of defendant, she sustained damage to the amount of one hundred and fifty dollars, for which sum, together with the value of the goods belonging to the plaintiff as sole trader, amounting to one thousand dollars, the plaintiff is entitled to judgment against defendant.

Judgment being rendered against defendant for one thousand dollars, and his motion for a new trial being denied, this appeal was taken from the judgment.

*John Reynolds* for Appellant.

At common law, the husband and wife are regarded as one person, and her legal existence lost or suspended, in a measure, during the continuance of the matrimonial union. 2 Kent, 129; Coke Litt., 112, 187; 1 Black. Com., 441.

The wife, therefore, can make no contract, except as she is expressly authorized by statute so to do, and the statute must be strictly construed and followed. 3 Cal. Rep., 83, 88; Duppa *v.* Mayo, 1 Saund., 276, note 2.

And every fact necessary to show a strict compliance with the statute must be averred and proved, for the statute is in derogation of the common law. Snyder *v.* Webb, 3 Cal. Rep., 83; 1 Samed, 276, note.

This act, allowing married women to transact business as sole traders, does not provide for the creation or setting apart of separate property, nor does it attempt to divorce husband and wife, and divide the common property. But it merely declares that married women, by complying with its provisions, may transact business in their own names, leaving the Court to give such construction to the law, as will secure the rights of the wife, without permitting any fraud upon her husband or his creditors.

This can only be done by allowing her, with her separate property alone, as the basis of her capital, to conduct a business, art, or profession, congenial, becoming, and suited to a woman.

Now, I submit, that the act authorizing married women to transact business in their own names, and protecting them in the exclusive control and enjoyment of the gains and profits of such business, cannot fairly be construed to allow them any greater privilege than to use and control their own separate funds, and with them to conduct business in their own names and on their own account, and to enjoy the profits of such business.

The statute does not create or set apart separate property, nor does it create any new right in property, but confers upon the wife the power to exercise an existing equitable right.

If the husband, becoming indebted, can, as agent, conduct his former business—his art and profession—in the name of his wife, establish such business with his creditors' money, and she take all the gain, and he do the work, a door is open for fraud that I am sure this Court will not recognize, and an inducement held out for men of avaricious disposition to degrade themselves and society to a most alarming extent.

*Gregory Yale* for Respondent.

Plaintiff was entitled to sue in her own name, by the express provisions of the act of the twelfth of April, 1852. Com. Laws, 881–2.

Section three provides that, "the person so making her declaration as aforesaid, shall be entitled to carry on said business, trade, profession, or art, in her own name; and the property revenue, money, debts, and credits, so invested, shall belong exclusively to said married woman, and shall not be liable for any of the debts of her husband, and said married woman shall be allowed all the privileges, and be liable to all the legal processes, now, or hereafter provided by law, against debtors and creditors.

By section five, if the amount invested is over five thousand dollars, the declaration shall be made under oath, that the surplus over five thousand dollars "did not come from any funds belonging to her husband."

The facts, from which the fraud is presumed, as alleged in the points on file, are all found by the Court, and the presumption of fraud, if any, is negatived by the finding and judgment.

TERRY, J., delivered the opinion of the Court—MURRAY, C. J., concurring.

This is an action instituted by the plaintiff, who is a married woman, and sole trader under the act of 1852, to recover the value of certain goods seized by defendant, under an execution against Samuel Guttman, the husband of plaintiff.

It appears that Samuel Guttman was engaged in the manufacture and sale of clothing; that he became involved, and that

his whole stock in trade was sold under execution; that shortly afterwards his wife availed herself of the provisions of the act "to authorize married women to transact business in their own names as sole traders," and commenced business in her own name, upon money partly borrowed by herself for the purpose, and partly received by her from boarders, before she became a sole trader.

The Court below found the value of the goods to be one thousand six hundred and fifty dollars; that the sum of six hundred and fifty dollars, the amount received from the boarding-house, was liable for the husband's debts; and gave judgment for the sum of one thousand dollars, and from this judgment the defendant appeals.

It is contended, that inasmuch as this action does not concern the separate property of the wife, the husband should have been joined as plaintiff. This point is not well taken. The act of April, 1852, vests in the married woman, who avails herself of its provisions, the exclusive ownership and control of all the money and property invested in the trade, or business in which she is engaged, and as to such business, and the property invested, she is entirely independent of her husband. See Mc-Kune *v.* McGarvey, October Term, 1856.

It is also contended that the act was designed to permit a married woman to invest only her separate property, in some business not unsuited to her sex. That it should not be so construed as to enable her to embark in business on capital furnished by her husband, or to pursue the same trade in which he was engaged; as such construction would afford to a debtor great facilities to defeat the claims of his creditors, by transferring his property, and avoiding the payment of his debts, while continuing business in the name of his wife.

We do not think the Legislature intended to limit the provisions of the act to those women who were so fortunate as to be possessed of separate property; they designed to afford to every married woman an opportunity of providing against the improvidence or misfortunes of her husband, by engaging in any legitimate calling, by protecting her earnings against her husband and his creditors, and enabling her, by her own energy and industry, to support herself and children.

So far from forbidding, the law, by the plainest implication, intends that the capital invested, to the extent of five thousand dollars, may be furnished by the husband. If the husband were at the time in embarrassed circumstances, such transfer would amount to a fraud upon his creditors, and therefore be void as to them, but would, we think, be good against all others. In this case, however, the question does not properly arise, as the money furnished by the husband was deducted from the judgment of the Court below.

The act in question does not confine sole traders to any particular trade or occupation, nor does it prohibit the husband from being employed by, or acting for, his wife, in relation to her business.

The fact that the trade or business was unsuited to her sex, or that the husband was employed in it, would be circumstances tending to establish fraud, but would not amount to conclusive evidence of its existence.

These facts were before the Court below, and the question of fraud raised by the pleadings was decided in favor of the plaintiff.

The business was certainly not unsuited to the sex or capacity of plaintiff; it was one of the few occupations offering a promise of remuneration, in which a woman can with propriety engage, and though we may object to the employment of the husband by his wife, as tending to impair his dignity and authority, as the head of a family, it certainly is no reason for depriving the plaintiff of her rights under the law.

The judgment of the Court below is affirmed, with costs.

BURNETT, J.—The principles involved in this case are, in my view, very important, and as I am compelled to dissent from the opinion of my associates, I will proceed to state my reasons.

A very important question raised and decided in the Court below, was whether the capital invested must be the separate property of the wife, or *may* be the property of the husband, when the amount does not exceed the sum of five thousand dollars, even conceding that the husband is indebted to others at the time the capital is furnished by him. The laws of this State exempting the homestead from forced sale, and a large amount of other property, and securing to the wife her separate property, giving her also one-half of the community property upon the death of the husband, and denying the husband the right to dispose of her portion of the common property by will, as this Court has held in the case of Beard v. Knox, (July Term, 1855,) are perhaps, when taken together, more liberal to families than the laws of any other State in the Union. The rights of honest creditors are more restricted here than elsewhere, and after having made these large reservations for the wife and family of the judgment-debtor, an intention to increase these reservations ought to be very explicitly and plainly expressed, before a Court would be justified in arriving at such a conclusion.

There is nothing in the act of 1852, that expressly says that the money invested in the business of the wife, may be composed of the property of the husband, and if so, shall be protected from his creditors. Taking the different statutes together, there would seem to be no great difficulty in understanding the intention of the Legislature. Under the act of

1850, the husband was allowed the management and control of the separate property of the wife, and could appropriate absolutely the profits of her separate estate in the same way that he could the common property of both. This left the wife no power to use or enjoy her own property, except as her husband permitted. She could not derive any benefit from it, except by her husband's consent. The statute of 1852, was designed to secure her rights as the owner of separate property. The Constitution had itself bestowed upon her full *capacity to own* separate property; and the capacity to own property, without the capacity to use it in lawful business, and as one may please to use it, is but the shadow without the substance. The intention of the Constitution was not legitimately carried out by the act of 1852. And the language of the third section is substantially a declaration that the property invested in the wife's business must be her separate property. The intention of this section is not to declare that the property of the husband may, by operation of the statute, become the property of the wife. The wife makes her declaration that she will do business in *her* own name, and on *her* own account, and this is substantially saying that she will do business upon her own capital. It is true the fifth section requires her to make a statement, under oath, that the surplus money above five thousand dollars invested in her business, did not come from any funds belonging to her husband. But this provision seems only intended as a guard against fraud when the amount was large, and cannot, by construction, be extended beyond its express provisions. It simply requires the statement, under oath, of the wife, when the capital invested in the business exceeds a certain sum, and does not say that when the capital is less than the sum stated it may come from the funds of the husband, and shall be protected from his creditors. Had the statute intended to exempt from execution the sum of five thousand dollars, in addition to the large amount of property previously reserved, there certainly would have been clear affirmative words to that effect, and the intention would not have been left to inference. The Court below, therefore, very properly decided that the money invested in the business of a *feme sole* trader, must not have come from the funds of the husband.

The defendant objects to the judgment of the Court below, as well as the finding of the Judge, sitting as a jury, upon the ground that there were conclusive evidences of fraud on the part of husband and wife, and the finding and judgment should have been for defendant.

The act of 1852, as before remarked, was intended to carry out the benevolent provisions of the Constitution, by giving to the wife that use of her separate property which is naturally incident to its ownership. But it never was the design of that act to provide ways and means for the commission of frauds

upon creditors; nor was it intended to give the husband and wife greater power to contract and deal with each other than that which previously existed. In other words, those relations and disabilities that naturally flow from the married state, were only modified in so far as they were inconsistent with the ownership of separate property by the wife, and her resulting right to use that property in business on her own account. It was intended that the business should be, in truth and in fact, and not in mere name, the separate business of the wife. The law was only intended for her benefit, to secure her the fair use of her own property and the profits of her legitimate business, and not to aid an insolvent husband in concealing his property from his creditors. The provisions of the law, when justly and legitimately applied, give the wife the perfect right, at any time, in her own discretion, to engage in business for herself, and in her own name, upon her own separate means, and secure to her the capital invested and all the profits of the business, independent of her husband, and without any regard to his condition or character, whether solvent or insolvent, idle or industrious, honest or dishonest.

That this statute has been greatly abused, and often perverted from its benevolent intent, there can be no question; and that it is the duty of the Courts to carry out its provisions, and at the same time to carefully prevent these abuses, would seem equally clear. If the Courts permit these great abuses to exist, then the statute becomes an instrument of evil, instead of good, and the ultimate and inevitable result must be, that the law itself will either become odious to the community, or the community itself will be more or less demoralized. Since the passage of the act, in 1852, the public prints have teemed with notices, on the part of married women, that they intended to carry on business in their own names; and the different kinds of business specified have included stock-raising, farming, blacksmithing, carpentering, brick-making, and almost all other kinds of business that are carried on most generally by men, and are, in their nature, unsuitable to the capacity, education, and position of females; and in many cases, the ostensible business of the wife was but a continuation of that of the husband, and a business not adapted to *her* capacity or position, but especially suited to *his;* and in most such cases, he is found conducting the business under the alleged capacity of *agent* of his own wife. Under such circumstances, it would seem to be the duty of the Courts to guard against these perversions of the law, not only in justice to the wronged and injured creditor, but in support of public morals and the best humanity; for if these monstrous abuses are not checked, the practice of married women doing business on their own account will become so disreputable, that decent females will suffer any privation before they will incur the odium of engaging in such a

30

business. The practical result will then be this: the abuses of the law will exist, while the good intended to be accomplished by it will be mainly defeated.

In the present case, it was shown that the husband of plaintiff had been engaged in the manufacture and sale of ready-made clothing; that a tailor employed by him had sued for his wages, obtained judgment and execution, under which the stock of the husband was sold out; that in a short time the wife was carrying on the *same* business, employing the *same* workman, and her husband acting as *her* agent, and that the capital on which the plaintiff commenced business was composed of six hundred and fifty dollars, the property of the husband, and two hundred dollars which she borrowed upon her own account. The plaintiff, before the failure of her husband, had done her own housework; had kept several boarders, her husband paying the rents and expenses of the establishment; and this six hundred and fifty dollars had been laid by, from time to time, by plaintiff, as she received the same in different sums from the boarders. The Court below very properly decided that the six hundred and fifty dollars was the money of the husband, as our statute had expressly so provided.

The combined circumstances of this case would seem to amount to full proof of fraud, and we think the Court below should have so found. The fact that the former business of the husband is continued and conducted by him as alleged agent of his wife, is a circumstance so pregnant with suspicion, that it should be held as conclusive evidence of fraud. The husband should not be permitted to act as the agent of his wife. Our statute holds the possession of personal property by the seller, after sale, as conclusive evidence of fraud, and this rule has ever been considered, by the wisest and most humane Judges, as the best practical rule, because it provides a simple and efficient check, and thus removes the opportunity and temptation to do wrong. And a rule equally plain and practical should be applied in the case of *feme sole* traders. If the husband wishes to do business suited to his own capacity, let him do it upon his own capital and in his own name, and if he cannot do this, and is compelled to enter the employment of others, let him obtain employment from some one else than his wife. Honest and fair industry, combined with prudent economy, never did fail in our country, and the more strictly parties are held to these necessary traits of character, the better for them and for the community at large.