[No. 986.]

## ANNIE YOUNGWORTH, RESPONDENT, v. JAMES JEWELL, APPELLANT.

SOLE TRADER'S ACT—CONSTRUCTION OF—RIGHTS OF CREDITORS.—The sole trader act was passed for the protection of married women. It was designed only to protect the wife against an improvident and worthless husband. The business in which she is engaged can not be carried on for the purpose of defrauding any creditor of her husband.

IDEM—MEANING OF THE WORDS "MANAGED" AND "SUPERINTENDED."— The words "managed" and "superintended," as used in the statute, are synonymous. The husband can not direct, conduct, or control the business in which the wife is engaged, or any part of it.

IDEM.—If the wife allows the husband to exercise his own judgment and discretion, and to direct, conduct, and control the business, or any separate branch of it, she brings herself within the prohibition of the statute, and must suffer the consequences.

IDEM—SALARY OF HUSBAND.—The fact whether the husband was employed at fixed wages or an agreed salary, whether he received a reasonable compensation for his labor or rendered his services gratuitously, would be material in enabling the jury to determine whether or not the transaction was sincere and bona fide, or only a colorable device to cheat, wrong, and defraud the creditors of the husband.

IDEM—COMMUNITY PROPERTY.—If the husband intermingles his skill, industry, and energy with the labor of his wife without receiving, or without any agreement that he should receive, any compensation for his time and attention, then the profits arising from said business, and the property paid for with such funds, would be community property (1 Comp. L. 152), and would be liable for the husband's debts.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*Lindsay & Dickson,* for Appellant:

The sole trader's act is in derogation of the common law and should be strictly construed. That provision of the act, which prohibits the husband from managing or superintending the business, was designed to protect the creditors of the husband against fraud and collusion between him and his wife (*Porter* v. *Gamba,* 43 Cal. 105), and should be rigidly enforced against the wife, and liberally construed in favor of the creditors. (*De Blane* v. *Lynch,* 23 Tex. 25; 16 Ohio, 509–521; 37 Ill. 247; 18 Penn. St. 421; 55 Ill. 354; 3 C. E. Green, 472: 5 Id. 13.)

*Seely & Woodburn*, for Respondent:

The sole trader's act makes the wife the exclusive owner of all the money, credits, and property invested in the business in which she is engaged; it gives her dominion over her acquisitions against all but her own creditors, and they can be made liable only for the debts of the husband when the business is managed or superintended by him. The act does not prohibit the husband from acting for his wife in relation to her business, and if he does act for her, it is no reason for subjecting her property to satisfy the claims of the creditors of her husband. (*Guttman* v. *Scannell*, 7 Cal. 456.) A manager or superintendent is one who directs, controls, and carries on the business, and not one who acts in a subordinate capacity.

By the Court, HAWLEY, J.:

Plaintiff is the wife of Charles Youngworth, and, as a sole trader, is engaged in keeping a restaurant in Virginia City. She brought this suit to recover certain personal property which had been levied upon by the defendant as the property of her husband. For a number of years prior to the time she became a sole trader, her husband carried on the same business, and during that time she assisted him by remaining behind the counter, in his place of business, to receive money from customers and to pay bills, while he superintended the kitchen, attended to and waited upon customers, and did the marketing for the restaurant. She had no money of her own when she commenced business as a sole trader. The property in question was bought by her and paid for out of the profits of the business.

The testimony of plaintiff tended to show that since she became a sole trader she managed the entire business, and that her husband acted in a subordinate capacity, under her directions, as an assistant. The testimony introduced upon the part of the defendant tended to show that the business was conducted and carried on in the same manner after as before she became a sole trader; that she and her husband respectively performed the same duties.

The jury found a verdict in favor of plaintiff. Defendant appeals from an order of the court refusing to grant him a new trial.

Did the court err in its construction of the sole trader's act in giving and refusing certain instructions?

This act (1 Comp. L. 223) was evidently passed for the protection of married women. It enables a married woman, upon complying with certain provisions therein named, to engage in business "in her own name and on her own account," and protects her earnings, and the property acquired by her energy, skill, and industry, from being taken for the payment of her husband's debts. She is authorized to conduct and carry on business as a *feme-sole* and becomes "responsible for the maintenance of her children." The law was designed only to protect the wife against an improvident and worthless husband. The business in which she engages can not be carried on "for the purpose of defrauding" any creditor of her husband. Its benevolent provisions can not be used as a cloak to hide, or cover up, any such fraudulent intent or purpose. It gives to the wife unusual rights and privileges, and demands of her good faith and honesty of purpose.

In the passage of the act the legislature recognized the fact that, owing to the intimate relations existing between husband and wife, it was necessary to insert provisions against its being used in fraud of the rights of the husband's creditors. It is questionable to my mind whether the safeguards provided for in the act are sufficient to accomplish the purpose intended. If there was a provision in the law prohibiting the employment of the husband by the wife, in any capacity, it would be a substantial check against fraud. It would remove not only the opportunity, but temptation to do wrong. It is, however, the duty of courts to deal with and declare the law, both in letter and spirit, as passed by the legislature. There is no provision in the law which prohibits the wife from employing her husband, in a subordinate capacity, in whatever business she may be engaged. If she employs him, it would be a circumstance tending to establish fraud, but would not amount to conclusive evi-

dence ·of its existence. (*Guttman* v. *Scannell,* 7 Cal. 459.)
But there is a provision against her carrying on any busi-
ness in her own name, "when the same is managed or
superintended by her husband." The words "managed"
and "superintended," as used in the statute, are synony-
mous. The husband can not direct, conduct, or control the
business in which the wife is engaged, or ·*any part of it.*
The following instruction, given by the court, in so far as
it declares that the statute applies only to the general busi-
ness, is erroneous:

"In order to justify you in finding that the plaintiff's
business was managed or superintended by her husband,
you must believe from the testimony, that the *general busi-
ness* was so managed or superintended by him; that he at
times managed any *separate branch* of the business, will not
constitute him manager or superintendent within the mean-
ing of the sole trader act."

If the wife allows the husband to exercise his own judg-
ment and discretion, and to direct, conduct, and control the
business, or any *separate branch* of it, she brings herself
within the prohibition of the statute, and must suffer the
consequences.

The court also erred in refusing to give the following in-
struction, asked by defendant's counsel: "If you find from
the evidence, that plaintiff became a sole trader with the
consent of her husband, and with the understanding be-
tween them that the husband should give his time and at-
tention to the business, and that this arrangement was made
for the purpose of delaying or defrauding the creditors of
the husband, then your verdict will be for the defendant."

This instruction was correct. It was material to the
issues raised by the testimony, and ought to have been
given. The errors already noticed are sufficient to warrant
a reversal of this case.

There are other and perhaps more important questions
presented by this appeal, which may or may not arise upon
another trial of this case. The testimony in the record be-
fore us is silent as to the employment of plaintiff's husband
in any capacity. The fact whether he was employed at fixed

wages or an agreed salary, whether he received a reasonable compensation for his labor, or rendered his services gratuitously, would be material in enabling the jury to determine whether or not the transaction was sincere and *bona fide*, or only a colorable device to cheat, wrong, and defraud the creditors of the husband.

If it should appear that the husband intermingled his skill, industry, and energy with the labor of his wife, without receiving, or without any agreement that he should receive, any compensation for his time and attention, then the profits arising from said business, and the property paid for with such funds, would be community property (1 Comp. L. 152), and would be liable for the husband's debts.

If the business in which the wife was engaged was managed and carried on in the same manner, after she was authorized to do business as a sole trader, as it was before that time, by her husband, she could not claim the property as against his creditors.

But if, on the other hand, it should appear that the wife, in good faith, commenced the business and carried it on in her own name, and on her own account; that she employed her husband at a reasonable compensation; that she did not allow him to manage or control the business; that the transaction was *bona fide*, and not intended to defraud, delay, or hinder any creditor or creditors of her husband, then the property and all the profits arising from the business in which she was engaged would belong to her, and could not be levied upon or taken in payment of her husband's debts.

The order appealed from is reversed, and the cause remanded for a new trial.