## Ben Hasley, Jr., v. The State.

### No. 5836.   Decided June 2, 1920.

**1.—Burglary—Indictment—Ownership.**

Where, upon trial of burglary the indictment alleged that the house was then and there under the control of F. J. Spence, without giving further description of the house, there was no error in overruling the motion to quash. Following: Pyland v. State, 33 Texas Civ. App., 382; and other cases.

**2—Same—Accomplice—Corroboration—Sufficiency of the Evidence.**

Where, upon trial of burglary, the evidence of the accomplice was sufficiently corroborated to connect the defendant with the commission of the offense, there was no reversible error.

**3.—Same—Care, Management and Control—Charge of Court—Hired Man.**

Where, upon trial of burglary the evidence showed that the alleged manager of the house was in actual care, control and management thereof.

the house in question being a mule barn on a certain ranch, one who work-ed around the barn, fed the stock and kept the harness, etc., was not the actual manager, and there was no error in refusing a charge that if the care, management and control of the barn was in such hired man's care, they must acquit.

**4.—Same—Rules Stated—Joint Control—Law of Theft.**

Care, control, and management are not necessarily exclusive in one person, but may be joint and several, within the comprehension of the law of theft, and unless the evidence raises the issue of exclusive care, control and management in some other person than the one named as the owner in the indictment, it is not necessary to present such issue to the jury.

**5.—Same—Requested Charges—Main Charge.**

Where the requested charges on the corroboration of the accomplice's testimony were included in the main charge, there was no error in refusing them.

**6.—Same—Evidence—Ownership.**

Upon trial of burglary, involving the question of ownership, there was no error in admitting testimony that the alleged owner named in the in-dictment employed and discharged men who worked on the place.

**7.—Same—Evidence—Practice in District Court—Discretion of Court.**

Upon trial of burglary there was no reversible error in admitting State's testimony with reference to tracks after defendant had closed his case, and which was not in rebuttal, as this matter was left largely to the discretion of the court, no abuse having been shown.

**8.—Same—Evidence—Preliminary Matter—Impeaching Testimony.**

Questions that are purely ancillary, and which only form a part of some predicate and but lead up to the matter at issue are not subject to the objections that they are immaterial, unless they contain something hurtful within themselves, and there was, therefore, no error in the questions pro-pounded to the deputy sheriff as to whether he had served an attachment on a certain witness leading up to a certain conversation which the State was seeking to impeach.

**9.—Same—Evidence—Declarations of Third Party.**

There was error in admitting certain testimony as to certain state-ments between witness and another, which was clearly hearsay and inad-missible; and a witness could not be impeached by proof of a conversation between other people, at which neither he nor defendant was present.

**10.—Same—Conduct of District Attorney—Practice in District Court.**

While the statements of the district attorney made in the presence of the jury, relative to certain matters which he sought to bring out concern-ing a certain witness, were improper, there was no reversible error, as ob-jections were sustained thereto.

**11—Same—Evidence—Bill of Exceptions—Rule Stated.**

The rule is well established that if the witness unequivocally admits making the statements, that ends the matter, and there is no need of fur-

ther proof. But if the matter is not clear, or is partially admitted or de-
nied, then such impeaching testimony is admissible, and there being no
predicate laid, the testimony as to certain conversations between witnesses
should not have been admitted.

12.—Same—Argument of Counsel—Practice on Appeal.

Where the matters complained of in the argument of State's counsel
would probably not occur upon another trial, they need not be considered.

Appeal from the District Court of Matagorda. Tried below before
the Honorable M. W. Munson.

Appeal from a conviction of burglary; penalty, two years im-
prisonment in the penitentiary.

The opinion states the case.

*Jno. E. Linn* and *Styles, Krause & Erickson,* for appellant.—On
question of motion to quash indictment: Scroggins v. State, 35 S. W.
Rep., 968; Mace v. State, 9 Texas Crim. App., 111; Knuckles v. State,
114 S. W. Rep., 326; Jones v. State, 117 S. W. Rep., 127; Kelly v.
State, 149 S. W. Rep., 110; McDonald v. State, 152 S. W. Rep., 1061;
Whorton v. State, 151 S. W. Rep., 300, and cases cited in opinion.

On question of want of corroboration: Gabrielskie v. State, 13
Texas Crim. App., 441; Jones v. State, 129 S. W. Rep., 1118; Maibaum
v. State, 128 S. W. Rep., 378; Fair v. State, 160 S. W. Rep., 1187.

On question of court's refusal to charge on ownership of hired
man: Shamburger v. State, 24 Texas Crim. App., 457; Crook v. State,
27 id., 242; Moore v. State, 28 id., 378; Johnson v. State, 29 id., 152.

On question of conversation between third parties in defendant's
absence: Barbee v. State, 23 Texas Crim. App., 199; Hart v. State,
121 S. W. Rep., 508; Figaroa v. State, 127 S. W. Rep., 193.

On question of argument of counsel: Pace v. State, 124 S. W.
Rep., 949; Kirksie v. State, 135 S. W. Rep., 124.

On question of impeaching witness: Williams v. State, 3 Texas
Crim. App., 420; Wilson v. State, 154 S. W. Rep., 1015.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted of burglary in the
District Court of Matagorda County, and his punishment fixed at two
years confinement in the State penitentiary.

A motion to quash the indictment is based on the fact that there was
no other description of the house in question, save and except that
it was then and there under the control of F. J. Spence. If it is
necessary in a burglary indictment that it be alleged that the house
in question is owned, occupied, and controlled, or is under the care
control and management of any persons, then the motion should have
been sustained. The direct question does not seem to have been up
in this State, within our knowledge. There appears nothing in our

burglary statutes, other than those relating to the burglary of a private residence, which in terms requires any averment of occupancy, ownership, or other description of the house alleged to have been burglarized. It is necessarily true, however, that an indictment for this offense must conform to the general requirement that whatever is necessary to be proved must be alleged; and also that there must be such certainty in the allegation as will put the accused on notice, and enable him to plead the judgment rendered in bar of subsequent prosecutions for the same offense. If the averment that the house in question was then and there under the control of F. J. Spence, individualizes the house, and would enable the accused to plead in bar the judgment rendered, this would seem to meet the demands of the law. Examining our authorities, we find that we have upheld indictments where the description of the house was, that it was "occupied and controlled by"— Pyland v. State, 26 S. W. R., 621. Control means to manage, to govern, to have authority over, etc. Anderson v. Stockdale, 32 Texas Rep., 64. Control and management are synonymous. Youngsworth v. Jewell, 15 Nev., 45. In the Lamater case, 42 S. W. Rep., 304, the trial court charged the jury that a person who is in direct control of the house, and has the exclusive management and control of the property therein, is in law the occupant of said house, and the owner of such property. In an opinion handed down by the present Presiding Judge of this Court, this charge of the lower court was upheld. In the instant case, the house in question was a mule barn, the same being a building about 150 feet long by 20 feet wide, and having a harness room at one end, and a feed room at the other. This building was located upon the farm of a Mr. Stoddard, who seems to have had several other farms and much other business; each of said farms being entrusted to the management of a local manager, who was charged with the duty of looking after all of the affairs of the same, including the employment and discharge of men who had various duties to perform under the direction of the local manager of the particular farm. Mr. F. J. Spence was the manager of the farm on which was located the mule barn in question, and the burglarized building was occupied on the night in question actually by the harness and mules; but the same was under the control of Mr. Spence. We think a plea in bar of any subsequent prosecution would needs be upheld under these facts, and that the allegation of control of the house was all that was necessary, and that the motion to quash was properly overruled. We think the house alleged to have been burglarized was sufficiently described to identify it. What we have said will also dispose of the contention that the trial court should not have charged the jury that the offense was made out, if it showed burglary of a house then and there under the control of F. J. Spence.

Appellant urges the insufficiency of the evidence to corroborate the accomplice, and insists that the trial court should have granted his request for an instructed verdict of not guilty. As stated, the premises

alleged to have been burglarized, was a mule barn, and it was shown in testimony that most of the harness was kept in the harness room at one end of said barn, but because of lack of room, some of said harness was hung on pegs out in the barn. It was stated that the mule barn was open, but that every night the harness room, which had only one door, was closed, and the door fastened by a peg which fitted into a staple. It was testified that said door was so closed and fastened on the night in question. Some harness was taken from both the open shed and out of the harness room. On the morning after the alleged burglary, an examination disclosed that seventeen collars, twelve bridles, ten lines, and seven sets of harness were missing. A search for some evidence as to how the property was taken, disclosed the fact that near a corner of the barn lot, a hack or light wagon had been hitched the night before, the indications being that the team had stood at said place for some time, the ground being much trampled. · A peculiarly large track, showing no heel to the shoe, and part of the sole gone, was observed, and also another and different track was testified to at the place where the hack had been hitched. Witnesses took the trial of this hack, and followed it for several miles, there having been a very recent rain, which enabled them to easily follow the tracks. The witnesses, following the trail, finally came to a place where the hack stopped, which was near a pasture belonging to appellant; and at a point a short distance away from the place where the hack stopped, most of the alleged stolen harness was found. The hack was then traced from the point where it stopped, to appellant's house, and from there to the home of one Shannon.

Albert Dadrick was placed on the stand by the State, and in his testimony stated that he went with the appellant, at appellant's solicitation, on the night in question, and assisted him in the removal of the harness, and accompanied him from the place where the harness was stolen, along various roads, crossing the Tres Palacios River, and on up Wilson Creek bottom, where, according to Dadrick, the parties concealed the harness in a thicket, at which place he said they separated, he, Dadrick, going on to the home of some kinsman named Smith, and appellant taking the hack and team on with him. This witness said the hack and the team, which was composed of two gray mules, belonged to Shannon, and was borrowed by appellant from Shannon on the Sunday afternoon preceding the night of the burglary. This witness further testified that as he and appellant drove the hack along on the night of the burglary, at the Tres Palacios bridge, they met some men in a buggy, and that they, he and appellant, had to back their hack off the bridge. He also testified that a little later, his party passed Mr. Legg and Mr. Spoor. The State placed upon the stand the witnesses Legg and Spoor, both of whom testified that on the night of the burglary, between eleven and twelve o'clock, they were passed on the road by two negro men in a hack, the team being composed of gray or grayish animals; and one of the witnesses describ-

ed the animals as mules. The State also placed on the witness stand, Jim and Tom Allison, who testified that they were in a buggy, and met two negros on the bridge over the Tres Palacios; that the negroes were driving a hack, and that the witness helped back said hack off the bridge. One of these men remembered that the negroes were driving a pair of gray animals, and the other remembered that the occasion was Sunday night, January 26, 1919, which was the night of the burglary. The State also introduced a witness named Moore, who testified that on Sunday, the 26th of January, at the request of appellant, he went to the house of one Shannon and hooked up a team of gray mules to a surrey, which he brought back to appellant's house, and that the appellant and the accomplice Dadrick, got into the surrey and drove off, and that he saw said outfit in the possession of a negro named Slim Davis, who worked for appellant, early the next morning, and that the team looked like it was about played out. The only rule known to us by which to test the sufficiency of evidence to corroborate an accomplice, is the well known one that if there be other evidence, independent of that of the accomplice, which tends to connect the accused with the commission of the offense, the corroboration will be sufficient. The evidence here detailed seems to us to sufficiently corroborate the accomplice Dadrick. It not only shows that the hack used in the transportation of the alleged stolen property was that of Shannon, but that it was borrowed by appellant the afternoon preceding the night of the burglary; that two negro men participated in the burglary, and thereafter accompanied said hack along the road down to appellant's pasture, where the property was hidden, and that the hack was driven from said point to appellant's house, and from there back to Shannon's. Both the appellant and Dadrick were negroes. In our opinion, this evidence tends to connect the appellant with the commission of the offense.

Appellant asked a charge to the effect that if the care, management and control of the barn was in Gibbs, the jury must acquit. The evidence showed that Mr. Spence, who was the local manager of said plantation, had employed Mr. Gibbs to work around the barn, and that Mr. Gibbs's duties were to see to the feeding of the stock, that the harness was kept in proper places, the doors shut, etc. The other hired men put away the harness of their individual teams, and got the same out in the morning, and Gibbs had no right of disposition thereof, or power to give or refuse consent to the removal of the harness. We think it clear that Mr. Gibbs was but the hired servant, charged with the custody, under the supervision of Spence, and that there was no evidence supporting any other theory, so as to make it needful to give the special charge asked. Moore v. State, 59 Texas Crim. Rep., 361; Lockett v. State, 59 Texas Crim. Rep., 361, 129 S. W. Rep., 627; Suggs v. State, 65 Texas Crim. Rep., 67, 143 S. W. Rep., 615; Hogg v. State, 66 Texas Crim. Rep., 252, 146 S. W. Rep., 195. Care, control and management are not necessarily exclusive in one person, but may be

joint in several, within the comprehension of our law of theft, and unless the evidence raises the issue of exclusive care, control and management in some person other than the one named as the owner in the indictment, it is not necessary to present such issue to the jury.

Appellant asked a special charge on the corroboration necessary in the case of an accomplice, which appears to be almost verbatim the language of the main charge on that point and which was properly refused because covered by the charge as given.

The objection to the question of the State to the witness Spence, as to who employed and discharged the men who worked on the place, and his answer that he did, is without merit. No injury could possibly result to appellant if the matter was really irrelevant, but we think this evidence admissible, as bearing on the question of ownership and control of the property taken and the house burglarized.

Objection was made to certain testimony of the witness Glover, as to tracks—that same was offered after the appellant had closed his case, and was not in rebuttal. Under our practice, the order of introduction of testimony is left almost wholly to the discretion of the trial court, and we would not review his action unless it was made to appear that injury had probably resulted, which was not true in the instant case.

Deputy Sheriff Jordan was asked by the State if he had an attachment for the witness Harry Sykes, to which question he answered affirmatively. He was then asked if he made any effort to serve same, which he also answered in the affirmative. This was all objected to upon the ground of immateriality, and that it was prejudicial to appellant. It is evident that the questions were but a part of, and leading up to the conversation had by said Jordan with the witness Sykes, when he was served with said attachment, upon the language of which conversation the State was seeking to impeach Sykes. We are unable to see anything in the said questions and answers which could cause any possible injury. Questions that are purely ancillary, and which only form a part of some predicate, and but lead up to the matters at issue, are not subject to the objection that they are immaterial unless they contain something hurtful within themselves.

Appellant has a bill of exceptions to the testimony of the State witness Lawson Jordan, as to statements made to him by Harry Sykes' mother. It appears from the recitals of the bill, that Jordan went to the home of Mrs. Sykes, inquiring for her son Harry. The witness was directed by State's counsel to tell what Mrs. Sykes said to him on that occasion, to which objection was made that such testimony would be hearsay, and also without any predicate, and inadmissible. The trial court overruled the objection, and the witness answered that Harry Sykes' mother told him on Tuesday afternoon, of January 13, 1920, that Harry was not there; that he had been gone about three weeks, and she did not know where he was. This testimony was hearsay and inadmissible. Harry Sykes had testified rather strongly for

the appellant, his testimony, if true, showing him to have been in the county of the prosecution at the time of the alleged burglary. Mrs. Sykes, the mother of Harry, and the party with whom the alleged conversation was had, was not a witness in the case. It was not claimed that appellant was present when this supposed conversation took place between Jordan and Mrs. Sykes, and we are unable to preceive any theory upon which the testimony could have been held admissible. We are of opinion that Harry Sykes could not be impeached by proof of a conversation between two other people, at which neither he nor appellant were present, even though it be admitted that one of them made statements in such conversation which would tend to show that the testimony given by Harry Sykes was not true. This evidence was not only inadmissible. but capable of harm to appellant.

We think the statements of the district attorney, made in the presence of the jury, relative to certain matters which he sought to bring out concerning the witness Harry Sykes, were improper, but as it appears from the bill of exceptions that the trial court sustained the objection, and as the case must be reversed, we conclude that such matter will not again arise.

There is also a bill of exceptions complaining that the State was permitted to introduce certain impeaching statements of the witness Jordan, as to various conversations had by him with the witness Sykes, it being stated in the bill of exceptions that the witness Sykes had not denied, but had admitted the matters and statements upon which the supposed impeachment rested. The rule is well established that if the witness unequivocally admits making the statements, that ends the matter. and there is no need of proof further; but if the matter is not clear, or is partially admitted or denied, then such impeaching testimony is admissible. What we have just said applies to the testimony of the witness Jordan as to conversations had with witness Sykes, as detailed in bill of exceptions No. 9. What Sykes said to Jordan out of the presence of the appellant could not become admissible, except it be as to some matter material in this case. which was made admissible by reason of the fact that an apt predicate therefor had been laid in the form of questions propounded to Sykes, and by him denied in whole or in part.

The matters complained of in the argument of State's counsel will probably not occur upon another trial.

For the errors mentioned. the judgment of the trial court will be reversed, and the cause remanded.

*Reversed and remanded.*