## HASLEY v. STATE.   (No. 5836.)

(Court of Criminal Appeals of Texas.   June 2, 1920.)

**1. Indictment and information ⟨key⟩71—Indictment for burglary must allege necessary facts with certainty.**

Indictment for burglary must allege whatever is necessary to be proved with such certainty as will put the accused on notice and enable him to plead the judgment rendered in bar of subsequent prosecution for the same offense.

**2. Burglary ⟨key⟩22—Indictment alleging building was under the "control" of specified person held sufficient; "management."**

In prosecution for burglary of a mule barn, averment that the building was under the control of specified person *held* sufficient as against objection that it should have been alleged to be owned, occupied, and controlled or put under the care, control, and management of such person; "control" and "management" being synonymous, and control meaning to manage, govern, to have authority over, etc.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Control; Management.]

**3. Criminal law ⟨key⟩511(2)—Evidence showing defendant's connection with crime is sufficient corroboration of accomplice.**

If there is other evidence independent of that of the accomplice which tends to connect the accused with the commission of the crime, the corroboration of the accomplice is sufficient.

**4. Criminal law ⟨key⟩511(2)—Evidence in corroboration of accomplice testimony held to sustain conviction.**

In prosecution for burglary, evidence independent of that of accomplice, tending to connect defendant with the commission of the crime, *held* sufficient to sustain conviction.

**5. Burglary ⟨key⟩46(5)—Refusal of requested instruction as to the management and control of the barn burglarized held proper.**

In prosecution for burglary of mule barn, alleged to have been under the control of manager of the plantation, refusal to instruct to acquit defendant if the barn was under the care, control, and management of specified person *held* proper under evidence that such person was a mere employé under the manager.

**6. Criminal law ⟨key⟩814(5)—Larceny ⟨key⟩8—Instructions unnecessary unless evidence raises issue; control not necessarily exclusive in one person.**

Care, control, and management are not necessarily exclusive in one person, but may be joined in several, within the comprehension of the law of theft; and, unless the evidence raises the issue of exclusive care, control, and management in some person other than the one named as the owner in the indictment, it is not necessary to present such issue to the jury.

**7. Criminal law ⟨key⟩829(1)—Requested charge covered by main charge properly refused.**

Refusal of special charge, which was almost verbatim the language of the main charge given by the court, was proper.

**8. Burglary ⟨key⟩33, 34—Evidence as to who employed and discharged men upon plantation admissible on question of ownership and control of property and building.**

In prosecution for burglary of mule barn, involving issue of whether person named in indictment had control, evidence of such person as to who employed and discharged the men who worked on the place *held* admissible on question of ownership and control of the property taken and the building burglarized.

**9. Criminal law ⟨key⟩1153(3)—Order of testimony discretionary with trial court.**

The order of introduction of testimony is almost wholly discretionary with the trial court, and appellate court will not review its action, unless it is made to appear that injury had probably resulted.

**10. Witnesses ⟨key⟩236(2) — Questions purely ancillary not subject to objection that they are immaterial.**

Questions that are purely ancillary, and which only form a part of some predicate and lead up to the matters at issue, are not subject to the objection that they are immaterial, unless they contain something hurtful within themselves.

**11. Criminal law ⟨key⟩419, 420(11)—Admission of hearsay held reversible error.**

In prosecution for burglary, defended on ground of alibi, where certain witness had testified for defendant on such issue, the admission of testimony as to conversation with such witness' mother, in the absence of such witness and the defendant, tending to impeach the testimony of such witness, was reversible error; testimony of such conversation being hearsay.

**12. Witnesses ⟨key⟩406—Cannot be impeached by proof of conversation between other persons in absence of witness and party for whom he testified.**

A witness cannot be impeached by proof of a conversation between two other persons at which neither he nor defendant for whom he testified were present, even though one of them made statements in such conversation which would tend to show that the testimony given by such witness was not true.

**13. Witnesses ⟨key⟩389—Evidence of statement by a witness inadmissible for impeachment, where making of statement is admitted.**

If a witness unequivocally admits making statements, proof as to the making of such statements is inadmissible for impeachment purposes; but if the matter is not clear, or is partially admitted or denied, such impeaching testimony is admissible.

Appeal from District Court, Matagorda County; M. S. Munson, Judge.

Ben Hasley, Jr., was convicted of burglary, and he appeals.   Reversed and remanded.

Jno. E. Linn and Styles, Krause & Erickson, all of Bay City, for appellant.

Alvin M. Owsley, Asst. Atty. Gen., for the State.

LATTIMORE, J. Appellant was convicted of burglary in the district court of Matagorda county, and his punishment fixed at two years' confinement in the state penitentiary.

[1, 2] A motion to quash the indictment is based on the fact that there was no other description of the house in question, save and except that it was then and there under the control of F. J. Spence. If it is necessary in a burglary indictment that it be alleged that the house in question is owned, occupied, and controlled, or is under the care, control, and management of any person, then the motion should have been sustained. The direct question does not seem to have been up in this state, within our knowledge. There appears nothing in our burglary statutes, other than those relating to the burglary of a private residence, which in terms requires any averment of occupancy, ownership, or other description of the house alleged to have been burglarized. It is necessarily true, however, that an indictment for this offense must conform to the general requirement that whatever is necessary to be proved must be alleged, and also that there must be such certainty in the allegation as will put the accused on notice, and enable him to plead the judgment rendered in bar of subsequent prosecutions for the same offense. If the averment that the house in question was then and there under the control of F. J. Spence individualizes the house, and would enable the accused to plead in bar the judgment rendered, this would seem to meet the demands of the law. Examining our authorities, we find that we have upheld indictments where the description of the house was that it was "occupied and controlled by." Pyland v. State, 33 Tex. Civ. App. 382, 26 S. W. 621. Control means to manage, to govern, to have authority over, etc. Anderson v. Stockdale, 62 Tex. 64. Control and management are synonymous. Youngsworth v. Jewell, 15 Nev. 45. In the Lamater Case, 38 Tex. Cr. R. 249, 42 S. W. 304, the trial court charged the jury that a person who is in direct control of the house, and has the exclusive management and control of the property therein, is in law the occupant of said house, and the owner of such property. In an opinion handed down by the present presiding judge of this court this charge of the lower court was upheld. In the instant case, the house in question was a mule barn, the same being a building about 150 feet long by 20 feet wide, and having a harness room at one end, and a feed room at the other. This building was located upon

the farm of a Mr. Stoddard, who seems to have had several other farms and much other business; each of said farms being intrusted to the management of a local manager, who was charged with the duty of looking after all of the affairs of the same, including the employment and discharge of men who had various duties to perform under the direction of the local manager of the particular farm. Mr. F. J. Spence was the manager of the farm on which was located the mule barn in question, and the burglarized building was occupied on the night in question actually by the harness and mules; but the same was under the control of Mr. Spence. We think a plea in bar of any subsequent prosecution would needs be upheld under these facts, and that the allegation of control of the house was all that was necessary, and that the motion to quash was properly overruled. We think the house alleged to have been burglarized was sufficiently described to identify it. What we have said will also dispose of the contention that the trial court should not have charged the jury that the offense was made out, if it showed burglary of a house then and there under the control of F. J. Spence.

Appellant urges the insufficiency of the evidence to corroborate the accomplice, and insists that the trial court should have granted his request for an instructed verdict of not guilty. As stated, the premises alleged to have been burglarized was a mule barn, and it was shown in testimony that most of the harness was kept in the harness room at one end of said barn, but because of lack of room some of said harness was hung on pegs out in the barn. It was stated that the mule barn was open, but that every night the harness room, which had only one door, was closed, and the door fastened by a peg which fitted into a staple. It was testified that said door was so closed and fastened on the night in question. Some harness was taken from both the open shed and out of the harness room. On the morning after the alleged burglary, an examination disclosed that 17 collars, 12 bridles, 10 lines, and 7 sets of harness were missing. A search for some evidence as to how the property was taken disclosed the fact that near a corner of the barn lot, a hack or light wagon had been hitched the night before, the indications being that the team had stood at said place for some time, the ground being much trampled. A peculiarly large track, showing no heel to the shoe, and part of the sole gone, was observed, and also another and different track was testified to at the place where the hack had been hitched. Witnesses took the trail of this hack, and followed it for several miles; there having been a very recent rain, which enabled them to easily follow the tracks. The witnesses, following the trail, finally

came to a place where the hack stopped, which was near a pasture belonging to appellant; and, at a point a short distance away from the place where the hack stopped, most of the alleged stolen harness was found. The hack was then traced from the point where it stopped to appellant's house, and from there to the home of one Shannon.

Albert Dadrick was placed on the stand by the state, and in his testimony stated that he went with the appellant, at appellant's solicitation, on the night in question, and assisted him in the removal of the harness, and accompanied him from the place where the harness was stolen, along various roads, crossing the Tres Palacios river, and on up Wilson Creek bottom, where, according to Dadrick, the parties concealed the harness in a thicket, at which place he said they separated, he (Dadrick) going on to the home of some kinsman named Smith, and appellant taking the hack and team on with him. This witness said the hack and the team, which was composed of two gray mules, belonged to Shannon, and was borrowed by appellant from Shannon on the Sunday afternoon preceding the night of the burglary. This witness further testified that as he and appellant drove the hack along on the night of the burglary, at the Tres Palacios bridge, they met some men in a buggy, and that they, he, and appellant had to back their hack off the bridge. He also testified that a little later his party passed Mr. Legg and Mr. Spoor. The state placed upon the stand the witnesses Legg and Spoor, both of whom testified that on the night of the burglary, between 11 and 12 o'clock, they were passed on the road by two negro men in a hack, the team being composed of gray or grayish animals; and one of the witnesses described the animals as mules. The state also placed on the witness stand Jim and Tom Allison, who testified that they were in a buggy, and met two negroes on the bridge over the Tres Palacios; that the negroes were driving a hack, and that the witness helped back said hack off the bridge. One of these men remembered that the negroes were driving a pair of gray animals, and the other remembered that the occasion was Sunday night, January 26, 1917, which was the night of the burglary. The state also introduced a witness named Moore, who testified that on Sunday, the 26th of January, at the request of appellant, he went to the house of one Shannon, and hooked up a team of gray mules to a surrey, which he brought back to appellant's house, and that the appellant and the accomplice Dadrick got into the surrey and drove off, and that he saw said outfit in the possession of a negro named Slim Davis, who worked for appellant, early the next morning, and that the team looked like it was about played out.

[3, 4] The only rule known to us by which to test the sufficiency of evidence to corroborate an accomplice is the well-known one that if there be other evidence, independent of that of the accomplice, which tends to connect the accused with the commission of the offense, the corroboration will be sufficient. The evidence here detailed seems to us to sufficiently corroborate the accomplice Dadrick. It not only shows that the hack used in the transportation of the alleged stolen property was that of Shannon, but that it was borrowed by appellant the afternoon preceding the night of the burglary; that two negro men participated in the burglary, and thereafter accompanied said hack along the road down to appellant's pasture, where the property was hidden, and that the hack was driven from said point to appellant's house, and from there back to Shannon's. Both the appellant and Dadrick were negroes. In our opinion, this evidence tends to connect the appellant with the commission of the offense.

[5] Appellant asked a charge to the effect that if the care, management, and control of the barn was in Gibbs the jury must acquit. The evidence showed that Mr. Spence, who was the local manager of said plantation, had employed Mr. Gibbs to work around the barn, and that Mr. Gibbs' duties were to see to the feeding of the stock, that the harness was kept in proper places, the doors shut, etc. The other hired men put away the harness of their individual teams, and got the same out in the morning, and Gibbs had no right of disposition thereof, or power to give or refuse consent to the removal of the harness. We think it clear that Mr. Gibbs was but the hired servant, charged with the custody, under the supervision of Spence, and that there was no evidence supporting any other theory, so as to make it needful to give the special charge asked. Moore v. State, 59 Tex. Cr. R. 361, 128 S. W. 1115; Lockett v. State, 59 Tex. Cr. R. 531, 129 S. W. 627; Suggs v. State, 65 Tex. Cr. R. 67, 143 S. W. 183; Hogg v. State, 66 Tex. Cr. R. 252, 146 S. W. 195.

[6] Care, control, and management are not necessarily exclusive in one person, but may be joint in several, within the comprehension of our law of theft; and, unless the evidence raises the issue of exclusive care, control, and management in some person other than the one named as the owner in the indictment, it is not necessary to present such issue to the jury.

[7] Appellant asked a special charge on the corroboration necessary in the case of an accomplice, which appears to be almost verbatim the language of the main charge on that point, and which was properly refused because covered by the charge as given.

[8] The objection to the question of the state to the witness Spence as to who employed and discharged the men who worked on the place, and his answer that he did, is with-

out merit. No injury could possibly result to appellant if the matter was really irrelevant, but we think this evidence admissible, as bearing on the question of ownership and control of the property taken and the house burglarized.

[9] Objection was made to certain testimony of the witness Glover as to tracks—that same was offered after the appellant had closed his case, and was not in rebuttal. Under our practice, the order of introduction of testimony is left almost wholly to the discretion of the trial court, and we would not review his action unless it was made to appear that injury had probably resulted, which was not true in the instant case.

[10] Deputy Sheriff Jordan was asked by the state if he had an attachment for the witness Harry Sykes, to which question he answered affirmatively. He was then asked if he made any effort to serve same, which he also answered in the affirmative. This was all objected to upon the ground of immateriality, and that it was prejudicial to appellant. It is evident that the questions were but a part of, and leading up to the conversation had by said Jordan with the witness Sykes, when he was served with said attachment, upon the language of which conversation the state was seeking to impeach Sykes. We are unable to see anything in the said questions and answers which could cause any possible injury. Questions that are purely ancillary, and which only form a part of some predicate, and but lead up to the matters at issue, are not subject to the objection that they are immaterial, unless they contain something hurtful within themselves.

[11, 12] Appellant has a bill of exceptions to the testimony of the state witness Lawson Jordan, as to statements made to him by Harry Sykes' mother. It appears from the recitals of the bill that Jordan went to the home of Mrs. Sykes, inquiring for her son Harry. The witness was directed by state's counsel to tell what Mrs. Sykes said to him on that occasion, to which objection was made that such testimony would be hearsay, and also without any predicate, and inadmissible. The trial court overruled the objection, and the witness answered that Harry Sykes' mother told him on Tuesday afternoon, of January 13, 1920, that Harry was not there; that he had been gone about three weeks, and she did not know where he was. This testimony was hearsay and inadmissible. Harry Sykes had testified rather strongly for the appellant, his testimony, if true, showing him to have been in the county of the prosecution at the time of the alleged burglary. Mrs. Sykes, the mother of Harry, and the party with whom the alleged conversation was had, was not a witness in the case. It was not claimed that appellant was present when this supposed conversation took place between Jordan and Mrs. Sykes, and we are unable to perceive any theory upon which the testimony could have been held admissible. We are of opinion that Harry Sykes could not be impeached by proof of a conversation between two other people, at which neither he nor appellant were present, even though it be admitted that one of them made statements in such conversation which would tend to show that the testimony given by Harry Sykes was not true. This evidence was not only inadmissible, but capable of harm to appellant.

We think the statements of the district attorney, made in the presence of the jury, relative to certain matters which he sought to bring out concerning the witness Harry Sykes, were improper, but as it appears from the bill of exceptions that the trial court sustained the objection, and, as the case must be reversed, we conclude that such matter will not again arise.

[13] There is also a bill of exceptions, complaining that the state was permitted to introduce certain impeaching statements of the witness Jordan as to various conversations had by him with the witness Sykes; it being stated in the bill of exceptions that the witness Sykes had not denied, but had admitted, the matters and statements upon which the supposed impeachment rested. The rule is well established that, if the witness unequivocally admits making the statements, that ends the matter, and there is no need of proof further; but, if the matter is not clear, or is partially admitted or denied, then such impeaching testimony is admissible. What we have just said applies to the testimony of the witness Jordan as to conversations had with witness Sykes, as detailed in bill of exceptions No. 9. What Sykes said to Jordan out of the presence of the appellant could not become admissible, except it be as to some matter material in this case, which was made admissible by reason of the fact that an apt predicate therefor had been laid in the form of questions propounded to Sykes, and by him denied in whole or in part.

The matters complained of in the argument of state's counsel will probably not occur upon another trial.

For the errors mentioned, the judgment of the trial court will be reversed, and the cause remanded.