## STATE v. CAMPER.

### No. 14644.

Court of Civil Appeals of Texas.

Dallas.

June 19, 1953.

Rehearing Denied July 17, 1953.

Second Rehearing Denied Oct. 16, 1953.

Price Daniel and John Ben Shepperd, Attys. Gen., Calvin B. Garwood, Jr., Edward Reichelt and Clyde B. Kennelly, Assts. Atty. Gen., all of Austin, Henry Wade, Dist. Atty., and John B. Webster, Asst. Dist. Atty., both of Dallas, for appellant.

Irwin & Irwin, Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal by the State of Texas from a judgment in favor of B. W. Camper, defendant in a suit instituted by the State under authority of Art. 666–42, Vernon's Ann.Penal Code, for the forfeiture of 2723 bottles of liquor.

Appellee has filed a motion asking that the appeal be dismissed because, (1) the statement of facts was filed in the trial court after the fifty days allowed by Rule 381, Texas Rules of Civil Procedure; and (2) the order entered by the trial court was arbitrary and illegal because not based on "good cause" as required by the provisions of Rule 381.

The record discloses that on Sept. 20, 1952 the trial court by written order granted appellant a ten-day extension of time to file the statement of facts in the trial court. Thereafter the statement was filed in the trial court and approved by that court on Sept. 24, 1952, which was the 55th day. This was in time to permit filing of the record, and it was filed in the Court of Civil Appeals within 60 days as required by Rule 386, R.C.P.

Rule 1, R.C.P., provides that the Rules shall be given a liberal construction. It has long been the rule in this State that the trial court has a broad discretion in the matter of extending the time for filing a statement of facts in the trial court, provided such action does not delay the filing of the record in the Court of Civil Appeals. It has been held by our Supreme Court that the signed approval of the trial judge of the statement of facts is in itself a sufficient extending of time to permit the filing of the statement. Luse v. Gibson, 119 Tex. 15, 23 S.W.2d 328. Our present rule is based on the former Art. 2246, R.C.S., and we believe it should be given the same construction. Johnson Aircrafts, Inc., v. Wilborn, Tex.Civ.App., 190 S.W.2d 426, ref. w. m.

Appellee seeks to draw an analogy between the application and legal effect of Rules 381 and 386. The two rules are quite different in their wording and meaning. As pointed out in Matlock v. Matlock, Tex. Sup., 249 S.W.2d 587, Rule 386 by its wording is so restricted that the Court of Civil Appeals is left but little discretion in determining whether to permit the late filing of a transcript. This is not true of Rule 381. We do not believe the trial court abused its discretion in allowing the extension of time for filing the statement of facts in the trial court. Appellee's motion to dismiss is therefore overruled, and we shall proceed to a consideration of the appeal on its merits.

The case was tried to a jury. In answer to the only issue submitted, the jury found that appellee had not intended to distribute, sell, warehouse, store, or transport the liquor in question to some place other than

2024 Cedar Springs, or the corrugated iron building involved herein. The court overruled appellant's motion for judgment non obstante veredicto. The State appealed.

All of appellant's points of appeal may be boiled down to this one question: Did appellee, as shown by the uncontradicted evidence, and in violation of the statute, exercise the privilege granted to him under a package store permit for 2024 Cedar Springs Road at an address, place or location, or at premises other than those covered by his permit? In other words, has appellee violated the law by keeping the liquor in question at 2020 Cedar Springs instead of at 2024 Cedar Springs, the address named in his permit?

The material facts are undisputed. Appellee's written lease describes his premises as "a concrete block building approximately 14 feet by 20 feet * * * to be numbered 2024 Cedar Springs Road in the City of Dallas, Texas." In appellee's application for a package store permit, and in the permit itself (and appellee has had but one permit), the location and address are described only as 2024 Cedar Springs. Subsequent to his leasing the building for his package store, appellee obtained permission from his landlord, Carl J. Gallagher, to use part of Gallagher's warehouse at 2020 Cedar Springs to store whiskey. The closest points of the warehouse and the package store are 89 feet apart. The two buildings are not connected. There was no consideration to support this agreement, nor was any definite length of time involved. Gallagher used this warehouse to store cigarette machines, music boxes, and other amusement devices. He also kept cold soft drinks and beer there for his personal use.

The landlord, Gallagher, had extended the same favor to another of his tenants, Luther Brisendine, who operated a cafe in a building at 2022 Cedar Springs, next door to appellee's package store. Brisendine used part of the warehouse to store canned goods and used motors.

The warehouse at 2020 Cedar Springs is a corrugated iron structure whose dimensions are 50 by 24 feet. It contained no partitions. Appellee was not assigned any particular part or section to which he alone had access. He merely had permission to store his wares in any available space along with a number of other persons. Gallagher allowed appellee and Brisendine as well as several of his own employees to possess keys to the warehouse. In fact some six or seven persons had keys to the building and had access to it at all times, day or night.

On Oct. 29, 1951 appellee and Ira Burnett moved two truck loads of whiskey from 2024 Cedar Springs to the warehouse at 2020 Cedar Springs. They used appellee's Ford pick-up truck. Ira Burnett was a painter by trade. When out of work he would hang around appellee's package store, and from time to time was hired by appellee to do odd jobs. During that same day deliveries of whiskey were made by wholesale houses to 2020 Cedar Springs.

These activities were observed by liquor law enforcement officers. Early next morning under authority of a search warrant they entered the premises at 2020 Cedar Springs. Inside the building they found a Dodge truck loaded with whiskey. This truck bore Texas license plates, but in the truck the officers found Oklahoma license plates. The gasoline tank was full of fuel and there was extra gasoline in a five-gallon container. The serial numbers had been removed from the cases of liquor.

Appellee testified that because of inadequate space in his package store he intended to transport this Dodge truck load of whiskey to his home for safekeeping as soon as he could obtain permission from the Liquor Board to do so. He did not own the Dodge truck, but had rented it. He did not know who the owner was, as Ira Burnett had arranged for the renting of the truck.

The Texas Liquor Control Act contains numerous provisions for the regulation and control of alcoholic beverages. It is unlawful "to exercise any privilege granted by a permit except at the *place, address,*

468

*premise*, or *location* for which the permit is granted". (Emphasis supplied.) Art. 666–17(22), P.C. "Premise" as used in the statute, "shall mean * * * any *adjacent* premises, *if directly or indirectly under the control of the same person.*" Art. 666–3a(7). A permit is a personal privilege and does not constitute property. Art. 666–13(b). Enforcement officers have a right to enter freely upon the licensed premises for purposes of inspection, investigation, or search. Art. 666–13(d); 666–17(4). Officers may seize alcoholic beverages kept, or transported in contravention of the Act. Art. 666–6(c). The act is to be construed for the accomplishment of the purposes for which it was enacted. Art. 666–2.

■ We are of the opinion that under the facts as shown in this record the property known as 2020 Cedar Springs Road cannot be considered the same, or any part of the place, address, premise, or location at 2024 Cedar Springs, for which appellee was granted a permit. We quote from a court in another jurisdiction: " * * * 'Licensed premises' can mean only the premises described in the license and in which, under the terms of the license * * * alcoholic beverages may be sold. Where, as in this case, the premises are described only by street and number, it is plain that the licensed premises are the premises owned by the licensee at that address. * * *" Fortino v. State Liquor Authority, 273 N.Y. 31, 6 N.E.2d 86, 87.

The Legislature must have intended that the place where the privileges of a liquor permit may be exercised is to be designated with definiteness and exactness. Otherwise enforcement officers would have to grope in dark uncertainty as to where their jurisdiction lay in performing their duties of inspection, investigation, and search. They could not know where to find the "premises" named in the permit. The law was not intended to encourage licensees to play a game of hide and seek with inspection officers.

Appellee contends that 2020 Cedar Springs is "adjacent" to 2024 Cedar Springs, the address shown in his permit; hence he had a right under the statute to use the former address to store his liquor.

The word "adjacent" is relative and has more than one meaning. Sometimes it means near to, or neighboring, as appellee contends it means in this case. Sometimes it means adjoining, contiguous, or abutting, as contended by appellant. We think its meaning is "determinable principally by the context in which it is used, and the facts of each particular case, or by the subject-matter to which it is applied." Broun v. Texas & N. O. R. Co., Tex.Civ.App., 295 S.W. 670, 674. Under the facts of this particular case, we cannot accept appellee's theory that 2020 Cedar Springs is "adjacent" to 2024 Cedar Springs within the meaning of the statute.

It will be observed that the statute refers to *"adjacent* premises, *if directly or indirectly under the control of the same person."* (Emphasis supplied.) Art. 666–3a(7). In Black's Law Dictionary, 4th Edition (1951), "control" is defined as meaning "to exercise restraining or direct influence over; regulate; restrain; dominate; counteract; govern." It has also been defined as meaning "to manage, to govern, to have authority," hence it is synonymous with management. Hasley v. State, 87 Tex.Cr.R. 444, 222 S.W. 579, 580.

■ Even if we were to consider the warehouse at 2020 Cedar Springs as adjacent to appellee's package store, we certainly must say that the warehouse was not under appellee's control. It was under the control of Carl J. Gallagher. Appellee had a gratuitous permission to use part of it. His permission was not supported by any consideration. Gallagher could have withdrawn his permission at any time. Moreover various other persons also had permission from Gallagher to use the warehouse and were allowed to possess keys to it.

In our opinion the trial court erred in overruling appellant's motion for judgment non obstante veredicto. Appellant's points on appeal are sustained. The judgment of the trial court is reversed and judgment is rendered in favor of appellant, forfeiting to the State of Texas the liquor in question.

Reversed and rendered.

### On Motion for Rehearing.

We do not hold that an appealing party does not have to show good cause before a trial judge may extend the time for filing a statement of facts in the trial court under Rule 381, Texas Civil Procedure. We do hold that the trial judge is allowed a broad discretion in determining what is good cause under the named rule, provided such extension of time does not operate to delay the filing of the record in the Court of Civil Appeals, as required by Rule 386, T.C.P.

In this case, appellee says that the trial court abused his discretion in granting appellant an extension of time beyond 50 days to file the statement of facts in the trial court. Appellee's basis for this contention is a long-distance telephone conversation Sept. 20, 1952, in which appellant asked for the extension. In that conversation appellant did not give his reasons for asking the extension, nor did the trial court ask for them. On the same day, Sept. 20, 1952, the court entered an order granting the extension of time. Thereafter on Sept. 24, 1952 the statement of facts was filed in the trial court and also in the Court of Civil Appeals. This was on the 55th day from the time the motion for new trial was overruled, so was well within the 60-day period allowed by Rule 386.

The fact that good cause was not mentioned in the one particular telephone conversation of Sept. 20, 1952 does not of itself show that good cause did not exist, or that the trial judge had not been informed in some other way of the circumstances which constituted good cause. Until the contrary is shown we are required to presume that the trial judge complied with the law and acted upon good cause. Texas & N. O. Ry. Co. v. Davis, Tex.Civ. App., 60 S.W.2d 505; Dittman v. Model Baking Co., Tex.Com.App., 271 S.W. 75.

On Sept. 24, 1952 the trial judge signed the statement of facts and ordered it filed, after stating in writing that he had examined it, found it correct, and approved it. It has been held by our Supreme Court that this act alone is a sufficient extension of time to support a late filing of a record in the trial court. Luse v. Gibson, 119 Tex. 15, 23 S.W.2d 328. Therefore, to support appellee's contention we would have to hold that the trial judge abused his discretion first on Sept. 20, 1952 in entering an order to extend the time, and that he abused his discretion a second time on Sept. 24, 1952 in signing and approving the statement of facts and ordering it filed.

In Luse v. Gibson, supra, the Supreme Court was construing Art. 2246, V.R.C.S., upon which our present Rule 381 is based. The part of the Rule material here is the same as the statute except as to minor textual changes. As to the point we are discussing, Rule 381 has been given the same interpretation as the statute. Lambert v. Houston Fire & Casualty Ins. Co., Tex.Civ.App., 254 S.W.2d 405.

The motion for rehearing is overruled.