

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 18, 1997

The Honorable Edmund Kuempel
Chair, Committee on State Recreational
  Resources
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-444

Re: Whether New Braunfels Utilities is an agent of the City of New Braunfels and related questions (RQ-931)

Dear Representative Kuempel:

You ask several questions about the nature of the relationship between New Braunfels Utilities ("NBU") and the City of New Braunfels. You first ask whether NBU is an agent of the city, and if it is, how much authority the city may delegate to NBU's board of trustees. Second, you ask whether NBU employees are in fact employees of the city, and whether the city may manage or control NBU employees. Third, you ask whether NBU may own real property, and whether the city or NBU's board ultimately controls the use and disposal of property acquired for NBU purposes.

We conclude that NBU is an agent of the city, but that the city may delegate to NBU all authority that V.T.C.S. article 1115 permits the city to delegate. We next conclude that NBU employees are in fact city employees, but that the city is authorized to and appears to have delegated to NBU the authority to manage and control those employees working for NBU. Finally, we conclude that NBU may acquire property only as an agent of the city; thus, the city ultimately controls the property.

The city established NBU in 1942 in accordance with V.T.C.S. article 1115, presumably by the terms of its encumbrance.[1] You state that the city transferred its water and sewer systems to NBU in 1959. Under city ordinance, the city has vested in NBU's governing board "the complete management and control" of the city's utility system.[2] The ordinances further direct NBU's board to "manage and operate the systems with the same freedom" the board of a private corporation

---

[1] *See* V.T.C.S. art. 1115 (authorizing municipal governing body to place management and control of utility system in board of trustees "by the terms of such encumbrance"). We note, in addition, that New Braunfels City Charter section 11.09 authorizes the city to create by ordinance a public utilities board to manage, control, and operate the city's utility system.

[2] NEW BRAUNFELS CODE § 130-26(a) (1995); *see also id.* § 130-31 (giving NBU board "complete authority and control of the management and operation" of utilities systems).

operating similar properties enjoys and "and in the same manner as" such a private corporation.[3] City ordinance directs the NBU board to appoint a general manager, who will, in turn, appoint all other employees, although the ordinances specifically prohibit the board from giving any employee a contract of tenure.[4] Finally, with respect to your questions, the ordinances expressly provide for and set the level of compensation for NBU board members,[5] but say nothing about compensation of employees working for NBU.[6]

You indicate that your questions arise out of recent controversies that have arisen between the city and NBU's board. With respect to the applicability of city employment policies, you indicate that NBU has established personnel policies and benefit programs that differ from the city's. Additionally, you indicate that the city and NBU are uncertain whether the city's ethics ordinance applies to NBU employees. With respect to the control and use of the land--specifically, Comal Park--you indicate that the city would like either to build a new library on the real property or sell it to a developer. The real property was purchased in 1969 using NBU funds, but in the name of the city. You add that the real property was purchased "for municipal purposes," but specifically for "future expansion of [NBU] Disposal Plant facilities."

We begin by considering your general questions about the city's relationship with NBU's board. You ask first whether NBU is an agent of the city or a separate legal entity. Article 1115, V.T.C.S., authorizes a municipality to create a utility board to manage and control the utility system. Prior decisions of the courts and this office have deemed the board of a municipal utility system, created under article 1115, an agent of the municipality.[7] We conclude, therefore, that the NBU board is an agent of the city.

As the Texas Court of Civil Appeals explained in *Guadalupe-Blanco River Authority v. Tuttle*,[8] the members of a utility system board created under V.T.C.S. article 1115 are municipal agents, and their powers are limited to those the municipality has conferred upon them:

---

[3]*Id.* § 130-27.

[4]*Id.* § 130-29.

[5]*Id.* § 130-30.

[6]This office does not construe municipal charters or ordinances. *See* Attorney General Opinion JM-846 (1988) at 1. We cite these sections only because they may relate to the questions you ask.

[7]*See Delta Elec. Constr. Co. v. City of San Antonio*, 437 S.W.2d 602, 605 (Tex. Civ. App.--San Antonio 1969, writ ref'd n.r.e.); *Guadalupe-Blanco River Auth. v. Tuttle*, 171 S.W.2d 520, 521, 524-25 (Tex. Civ. App.--San Antonio 1943, writ ref'd w.o.m.); *San Antonio Indep. Sch. Dist. v. Water Works Bd. of Trustees*, 120 S.W.2d 861, 865 (Tex. Civ. App.--Beaumont 1938, writ ref'd); *Sifford v. Waterworks Bd. of Trustees*, 70 S.W.2d 476, 477 (Tex. Civ. App.--San Antonio 1934, writ ref'd); Attorney General Opinion JM-4 (1983) at 2.

[8]171 S.W.2d 520 (Tex. Civ. App.--San Antonio 1943, writ ref'd).

The powers and duties of the Board of Trustees were fixed and are therefore limited by the express or necessarily implied provisions of the contract contained in the [municipal] ordinance . . . . Although the details and manner of the performance of its duties are left largely to the discretion of the Board, it is clear that its powers are also derived from and consequently dependent upon the provisions of the contract contained in the ordinance. Beyond the powers and duties therein conferred the Board cannot go.[9]

This leads us to your second question: how much authority the city may delegate to the board under V.T.C.S. article 1115. On its face, article 1115 authorizes a municipality to delegate only "management and control" of the utility system to the system's board. We construe the terms "management" and "control" in this context largely as synonymous;[10] the terms indicate governing, supervising, directing, and conducting the affairs of the utility system.[11] Accordingly, a municipality may delegate to the board of its utility system authority to govern, supervise, direct, and conduct the affairs of the utility system. On the other hand, the municipality may not delegate to the board of the utility system any authority beyond that permitted by article 1115.[12]

Third, you ask whether employees who work for NBU are in fact city employees and whether the city may manage or control NBU employees, including the general manager. Because NBU is an agent of the city, any contract with NBU is in fact a contract with the city.[13] An employment contract ostensibly with NBU is in fact an employment contract with the city. We conclude, therefore, that employees who work for NBU are in fact city employees.[14]

We turn to the second half of your third question. We believe article 1115, by authorizing a municipality to delegate to the board of its utility system the power to manage and control the

---

[9]*Id.* at 521.

[10]*See Hasley v. State*, 222 S.W. 579, 580 (Tex. Crim. App. 1920); *State v. Camper*, 261 S.W.2d 465, 468 (Tex. Civ. App.--Dallas 1953, writ ref'd).

[11]*See Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Bd.*, 624 N.E.2d 556, 560 (Mass. 1993); *Carter v. Carter*, 359 S.W.2d 184, 187 (Tex. Civ. App.--Waco), *writ dism'd w.o.j.*, 362 S.W.2d 646 (Tex. 1962) (per curiam); *Camper*, 261 S.W.2d at 468; III THE OXFORD ENGLISH DICTIONARY 851-52 (2d ed. 1989) (defining "control"); IX THE OXFORD ENGLISH DICTIONARY 293 (2d ed. 1989) (defining "management").

[12]Conversely, because V.T.C.S. article 1115 is written permissively, we do not believe a municipality must grant to its utility system board full power to manage and control the system. Rather, we believe the municipality may choose to delegate some lesser authority, so long as the delegated authority is included within the meaning of "managment and control."

[13]*See Delta Elec. Constr. Co.*, 437 S.W.2d at 605.

[14]*See also National Council of Ry. Patrolmen's Union v. Sealy*, 56 F. Supp. 720, 723 (S.D. Tex. 1944).

utility system, permits a municipality to delegate the management and control of employees who work for the system. We are thus interpreting the term "system" to include those employees who operate and administer the physical plant.[15]

Moreover, we believe a court, looking at the city's ordinances, would find that the city has in fact delegated to the NBU board broad authority to manage and control employees working for NBU, including the authority to set employee policies, compensation, and benefits. The city has, for example, authorized the NBU board to "manag[e], control[], and operat[e]"[16] the utility system just as if it were "the board of directors of a private corporation operating properties of a similar nature."[17]    More specifically, the city has authorized the NBU board "to employ and pay the compensation of" the general manager, attorneys, and other necessary personnel.[18]

Fourth, you ask whether NBU may own real property or whether it holds real property only as an agent of the city. We conclude that NBU may manage and control certain property for the city, but only the city may own the property. A utility board cannot hold title to real property; only the municipality that created the utility board may do so.[19] A possession and holding by a municipal utility system is in fact a possession and holding by the municipality.[20] Any deed that lists NBU as owner means merely that NBU acquired the real property as an agent of the city.

In connection with this question, you ask whether the city or NBU has ultimate authority over property acquired for NBU's use and over the disposal of the property. Because the city, not NBU, owns the property, the city has ultimate authority to determine the use to which property acquired for the NBU will be put and how to dispose of the property. As the Court of Civil Appeals explained in *Guadalupe-Blanco River Authority v. Tuttle*,[21] the board of a municipal utility system has "no

---

[15]In this context, "system" denotes "a group of devices or artificial objects or an organization forming a network . . . for distributing something." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1199 (1990); *see* XVII THE OXFORD ENGLISH DICTIONARY 496 (2d ed. 1989); *see also* Gov't Code § 312.002 (requiring interpreter of statutes to give word its ordinary meaning unless word is term of art).

[16]NEW BRAUNFELS CODE § 130-26. The city's delegation is consistent with section 11.09 of its charter, which authorizes the city council to create by ordinance a public utilities board "for the purpose of managing, controlling, and operating" a utility system.

[17]*Id.* § 130-27.

[18]*Id.* § 130-31.

[19]*See Guadalupe-Blanco River Auth.*, 171 S.W.2d at 524-25; *San Antonio Indep. Sch. Dist.*, 120 S.W.2d at 865; *Sifford*, 70 S.W.2d at 477. Under *Sifford*, the municipality, not the utility board, could be liable for injuries incurred on the real property. *See Sifford*, 70 S.W.2d at 477.

[20]*San Antonio Indep. Sch. Dist.*, 120 S.W.2d at 865.

[21]171 S.W.2d 520.

character of title" to city property, even if the utility system possesses the property.[22]  Moreover, under V.T.C.S. article 1115, a municipality cannot delegate to the board of its utility system ultimate control over city property.[23]  A municipality's ownership is subject only to the lien securing the payment of revenue bonds.[24]

You do not indicate that the real property was purchased using bond proceeds or if it is part of the utility system.  Bond proceeds, of course, may be spent only for the purposes for which the bonds were issued and as provided by the authorizing bond documents.[25]  Additionally, a municipality with a population less than 1.2 million may dispose of property constituting part of the system only in accordance with the applicable covenants or mortgages and V.T.C.S. article 1112, section 1.  Subject to these and other statutory restrictions on the sale of property used as a park,[26] we conclude that the city may use the property at issue for a city library if it wishes or sell the property if it wishes, even if the city's use of the property is contrary to NBU's desires.

---

[22]*Id.* at 521, 522.

[23]*See id.* at 521.

[24]*Id.; see also* V.T.C.S. arts. 1112, 1113, 1118a.

[25]*See, e.g., Matter of Troy Dodson Constr. Co.*, 993 F.2d 1211, 1216 (5th Cir. 1993) (interpreting Texas law); *Barrington v. Cokinos*, 338 S.W.2d 133, 142 (Tex. 1960) (quoting *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936)); *Inverness Forest Improvement Dist. v. Hardy St. Inv.*, 541 S.W.2d 454, 460 (Tex. Civ. App.--Houston [1st Dist.] 1976, writ ref'd n.r.e.).

[26]We do not decide whether other statutory restrictions on the sale of the real property at issue here may apply. *See, e.g.*, Local Gov't Code §§ 253.001, 272.001; Parks & Wild. Code § 26.001; V.T.C.S. art. 1015c, § 4.

## S U M M A R Y

The governing board of a municipal utility system acts as an agent of the municipality that created it. Under V.T.C.S. article 1115, the municipality may delegate to the board "management and control" of the utility system, but the municipality may not delegate any authority inconsistent with article 1115.

Employees of a municipal utility system are in fact employees of the municipality. Article 1115 permits a municipality to delegate to the board of its utility system management and control of municipal employees working for the system. Where a municipality has granted to that board the authority to manage and control the system "with the same freedom" as and "in the same manner as" the board of a private corporation operating a similar system and to employ and pay all necessary personnel, a court probably would find that the municipality has in fact delegated the authority to manage and control employees working for the system.

A municipal utility system may acquire or hold real property only as an agent of the municipality. Thus, the municipality may use the property or dispose of the property as it wishes. A municipality may not delegate to the governing board of its utility system ultimate control of municipal real property.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General