### SAN ANTONIO INDEPENDENT SCHOOL DIST. v. WATER WORKS BOARD OF TRUSTEES et al.

#### No. 3179.

Court of Civil Appeals of Texas. Beaumont.

June 16, 1938.

Rehearing Denied Oct. 26, 1938.

Hicks, Dickson & Lange, of San Antonio, for appellant.

Wm. Aubrey and Templeton, Brooks Napier & Brown, all of San Antonio, and Chauncey H. Clarke, of St. Louis, Mo., for appellees.

COMBS, Justice.

This case is before us on transfer by the Supreme Court from the San Antonio Court of Civil Appeals.

By this suit San Antonio Independent School District seeks to collect school taxes on the water works system of the City of San Antonio for the years 1925 to 1935, inclusive, amounting to $533,258.-98. The sole question is whether the water works system is owned and held by the City of San Antonio, so as to be exempt from taxation under the Constitution and laws of this state. The controlling facts are free from conflict, and so far as necessary to the decision of the case may be summarized as follows:

For many years prior to June 1, 1925, the San Antonio Water Supply Company, a private corporation, owned the water works system in the city of San Antonio.

On March 5, 1925, the 39th legislature enacted a statute effective as of that date, and entitled "An Act to empower cities having more than one hundred sixty thousand (160,000) inhabitants to purchase or otherwise acquire water systems, and additions, extensions and enlargements thereto, and additional water powers, riparian rights, and repairs of such systems; * * * prescribing the powers and limiting the manner of their exercise; providing for a board of trustees to carry out any contract or encumbrance, providing for the election of a trustee and his successor to make sale on default in payment; * * * prohibiting the sale of such systems unless authorized by a majority vote of the qualified property taxpayers, or under the terms of such encumbrance; and prohibiting the encumbrance of such systems for purchase money or original cost, unless authorized in like manner; providing for approval by the Attorney General," etc. Acts 1925, pp. 154–157, c. 33, Vernon's Ann.Civ.St. art. 1109a. This statute was re-enacted by the 43d Legislature in 1933, and there was added to the original Act provisions applicable to cities having more than 290,000 inhabitants, and also providing: "Sec. 7. All proceedings heretofore had by cities having more than one hundred sixty thousand (160,000) inhabitants, in the acquisition of any water systems, and the encumbrance of same, within the authority given by this Act, be and the same are hereby approved and ratified." Acts 1933, 43d Legislature, 1st C.S., page 113, Ch. 36, Vernon's Ann.Civ. St. art. 1109a, § 7. Both Acts (Vernon's Ann.Civ.St. art. 1109a, § 1 et seq.) authorized all cities having more than 160,-000 inhabitants to purchase or otherwise acquire water systems, and additions or extensions to, or enlargements of, any such water systems; and to issue bonds or notes therefor; and to secure the payment thereof, to mortgage and encumber any such water systems; and providing for the fixing of rates; and providing that there shall be charged and collected for the services a sufficient rate to pay all operating, maintenance, depreciation, replacement, betterment and interest charges, and for interest and sinking fund sufficient to pay any bonds or notes issued to purchase, construct or improve any such systems, or of any outstanding indebtedness against same, and that no part of the incomes of any such systems shall ever be used to pay any other debt, expense or obligation of such city, until the indebtedness so secured shall have been finally paid. Both Acts (Vernon's Ann.Civ.St. art. 1109a, § 4) provided further that the management and control of such systems during the time same are encumbered may, by the terms of such encumbrance, be placed in the hands of the city council of such city, but, if deemed advisable, may be placed in the hands of a Board of Trustees to be named in such encumbrance, consisting of not more than five members, one of whom shall always be the Mayor of such city; and further that the terms of office of such Board of Trustees, their powers and duties, the manner of exercising same, the election of their successors, and all matters pertaining to their organization and duties may be specified in such contract of encumbrance; and providing further that, in all matters where such contract is silent, the laws and rules governing the council of such city shall govern said Board of Trustees so far as applicable. The Act also empowered the city council or Board of Trustees, having such management and control, to make rules and regulations governing the furnishing of service to patrons. The Act (Vernon's Ann.Civ.St. art. 1109a, § 5) also provided that the contract of encumbrance may name or provide for the selection of a trustee to make sale of the properties upon default, etc. And by the express terms of the Act (Vernon's Ann.Civ.St. art. 1109a, § 6), it provided that such water systems may not be encumbered for purchase money, or original cost, until such encumbrance shall have been authorized by a majority vote of the qualified property taxpayers of such city. The Charter of the City of San Antonio also authorized the city to acquire such water systems and issue bonds in payment thereof, the bonds to be liquidated out of the revenue of the plants.

Pursuant to the Act of March 5, 1925, and on June 1, 1925, the water works system was sold to the city of San Antonio by the following transactions. The owner, the San Antonio Water Supply Company, by deed conveyed the property to Natt T. Wagner, of St. Louis, Mo. Wagner in turn conveyed the property to the City of San Antonio in consideration of the city executing and delivering Wagner $7,000,000 in revenue bonds, payable serially over a period of forty years, with interest at the rate of 5½ per cent. A vendor's lien was retained to secure pay-

ment of the purchase price. As part of the transaction, the City of San Antonio and the St. Louis Union Trust Company entered into a trust agreement, by the terms of which the Water Works Board of Trustees was created and the City of San Antonio conveyed the water works system to St. Louis Union Trust Company, trustee, to secure payment of the bonds and interest. The deed of trust covers 50 pages of the statement of facts, and is far too lengthy even to summarize in this opinion. However, certain pertinent provisions may be stated as follows: " * * * the City of San Antonio covenants and agrees that so long as any of the bonds above mentioned shall remain outstanding and unpaid, the possession, management and control of said property, and all of its income and profits, shall be and is hereby placed in the hands of a Board of Trust to be known as the Water Works Board of Trustees, consisting of five members who are hereby appointed as follows: A. W. Seelingson, John W. Tobin (Mayor), and his successor in office, Conrad A. Goeth, S. B. Weller and Otto Wahrmund; * * * to continue in office until death, or until the last one of the bonds have been paid on May 1, 1965 * * * it being provided that said Board shall have to operate said property in accordance with the terms of said deed of trust and trust agreement, and such rules and regulations as may be adopted by said Board."

It was further provided that vacancies on the Board shall be filled by the surviving members of the Board, and that in filling vacancies on said Board the Mayor cannot vote. By the terms of the trust agreement, the trustee was given the right among other remedies to rescind the sale and to retake the property and hold the same as trustee for all the holders of outstanding bonds, with power to resell and distribute the proceeds among the bond holders, the city waiving all rights of redemption or appraisement. It was provided by the bonds and by the trust agreement that said bonds should never become a charge against the City, but payment is to be made out of the revenues of the water system. And in that connection, it was provided that all the income from the operation of the water works system, and extensions, shall be set aside and kept separate from any other funds of the city, and "* * * shall be under the exclusive control of the Water Works Board of Trustees, in a special depository, to be selected

by said Water Works Board of Trustees." The evidence shows that the funds are kept separate under the control of the Water Works Board of Trustees in a depository of their selection and the City Council has nothing to do with said funds. All operating costs and maintenance costs are to be paid out of the revenues. The trust agreement also provides: "The City hereby covenants and agrees to pay out of the earnings of said System any and all taxes, assessments and levies which shall from time to time be legally imposed, assessed or levied upon the property and franchises hereby conveyed and intended to be conveyed, the lien whereof might be held superior to the lien of these presents, so that the priority of these presents shall at all times be duly maintained and preserved."

The trust agreement was duly submitted to the people of San Antonio at an election held for the purpose and fully approved as required by statute. The proof showed that the Water Works Board of Trustees has operated the water system continuously since the Board took over the property, and has paid all maturing bonds and interest, and, in addition, has purchased more than half a million dollars worth of the outstanding bonds. It was testified that the water service has been improved and extended, free water furnished to the city for municipal purposes and the water rates reduced several times. In that connection it was testified that the City of San Antonio has the cheapest water rates of any large city in the state. It appears without dispute that the Water Works Board of Trustees has operated the water system as an autonomous board, without any control from the governing body of the city.

The trial was to the court without a jury, and, at the conclusion of the evidence, the trial judge ruled against the School District. He filed a memorandum opinion wherein he found: (1) That the deed from Wagner to the city passed the title to said property to the City of San Antonio; (2) that said property was owned and held by the city for public purposes; and (3) that the Water Works Board of Trustees was only an agency of the city. The trial judge concluded, as a matter of law, that the Water Works property was not subject to taxation.

## Opinion.

The Constitution of the State of Texas, Article 11, Section 9, Vernon's Ann.St. Const. art. 11, § 9, provides: "The prop-

erty of the counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor. Fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation," etc.

Article 8, Sec. 2, Vernon's Ann.St.Const. art. 8, § 2, provides: "* * * The Legislature may, by general laws, exempt from taxation public property used for public purposes."

Article 7150, Vernon's Ann.Civ.St., exempts from taxation: "4. Public property. —All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof, or the United States."

The decision of this case turns upon the sole question of whether or not the Water Works System, which supplies the City of San Antonio, is "owned and held" by the City of San Antonio, so as to come within the provisions of the State Constitution which exempts such property from taxation. As we construe appellant's brief, its theory is: (1) That the City of San Antonio does not own the Water Works System, but has merely a contract to purchase it, and (2) that, even if it be conceded that it owns the title to said property, it does not hold the property, but, instead, said property is held by the Water Works Board of Trustees, which is no part of the government of the City of San Antonio.

■ We think that appellant's contention, that the City does not own the Water Works System, is clearly untenable. The deed from Wagner to the City conveyed the property to the City by general warranty deed. The City has never parted with the ownership of the property vested in it by that deed. By the trust agreement, it merely further secured the payment of the purchase price by creating a deed of trust lien in addition to the vendor's lien retained in the deed. Its title to the property will, of course, not be absolute until the indebtedness is satisfied and the liens discharged; but it is, nevertheless, in the meantime, the owner of the property, subject only to the indebtedness. Its ownership of the property is no different from that of any private owner who holds property against which there is an outstanding lien.

■ We think appellant's second contention is also without merit. By vesting the management and control of the Water Works System in the Water Works Board of Trustees, the City of San Antonio did not cease to "hold" the property within the meaning of the Constitutional exemption. On this point appellant insists that there can be no "holding" of the Water Works property by the city when the mayor, council and other municipal officers are denied all right of possession, management, or control of it. The contention overlooks the important fact that the mayor, city council, and other municipal officers are not the City of San Antonio. They are merely the agents through which the corporate functions entrusted to them by law and the city charter are exercised. The inhabitants residing within the corporate limits, or those entitled to vote at municipal elections, are the members of the corporation and these, in connection with the territory embraced within the corporate limits, constitute the corporation. McQuillin Municipal Corporations, Vol. 1, Secs. 116 and 117, p. 286 et seq. In the instant case, the trust agreement entered into by the city of San Antonio set up a special agency, a Board of Trustees, to manage and control the Water Works properties. The contract which brought that Board into being was the contract of the people of San Antonio, and fixed the prerogatives and duties of said Board. The Board of Trustees was as truly created by the City of San Antonio and, within its limited field of operation, is as certainly the agent of the City of San Antonio as the city council and other existing agencies of the municipality. In operating the properties and supplying water service to the people of San Antonio, the Water Works Board is acting for the principal, and its "possession" and "holding" of the property is a possession and holding by the City itself. Certainly a municipality, like an individual, may hold possession of its property through an agent. Indeed, because of its corporate nature it can only hold possession in that manner, and the fact that the management and control of the Water Works property has been vested in a specially created agency rather than the mayor and city council is immaterial. It was the evident purpose of the people of the City, in creating the special Board, to remove the operation of the Water Works System entirely from the influence and

control of the city governing body, and to free its operations from the vicissitudes of political control or manipulation. It may be that the creation of the new agency rather than entrusting the operation of the Water System to existing agencies was unusual, but, nevertheless, we have no doubt it was within the powers conferred by law.

But it is insisted that the creation of the Board of Trustees, whose terms of office might extend for a maximum period of 40 years, was in violation of the Constitution, Art. 16, §§ 30, 30a, Vernon's Ann.St.Const. art. 16, §§ 30, 30a, and, therefore, void. The contention is not sound. The members of the Water Works Board of Trustees are not constitutional officers. A municipal corporation is invested with two kinds of powers or functions, governmental and proprietary. Governmental functions are exercised in the administration of the affairs which affect the public generally, and are performed by virtue of powers conferred upon the city as an agency of the state. Proprietary functions pertain to business affairs administered for the special benefit of the urban community embraced within the corporate boundaries. City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202. The ownership and operation of public utilities belong to the latter class of powers. Community Natural Gas Co. v. Northern Texas Utilities Co., Tex. Civ.App., 13 S.W.2d 184, and authorities cited.

To adopt the contention of the appellant would have the practical effect of denying to the Legislature the right to empower Texas cities to acquire their water works systems, and other essential utilities, upon a contract providing for payment therefor out of the revenues of operation over a long period of years. "The exercise of the power of the Legislature to make improving changes in non-constitutional agencies of public service in promotion of the general welfare is conducive of good government. The power ought not to be restrained further than the people have plainly ordained." Cowell v. Ayers, 110 Tex. 348, 220 S.W. 764, 766.

The conditions of modern complex civilization have made necessary enormous enlargement of the powers of city government. The modern municipal corporation is of necessity clothed with broad powers in making contracts for the advantageous and economical operation of its public services. We have no doubt that the people of San Antonio were fully empowered to make the contract, which they entered into on June 1, 1925, whereby they acquired the Water System supplying their city, and contracted for its payment to be derived from the revenues of operation. On the facts, it seems to have been an advantageous contract. But so far as the courts are concerned, that is immaterial; since the wisdom of the contract is a matter peculiarly within the province of the people of San Antonio to decide. It is obvious that, if the school tax against this property should be sustained, then the people of San Antonio will have to pay it through increased water rates. Furthermore, if the school district may tax it, then it is also subject to taxation by the other taxing units, city, road district, county and State. All such taxes would be paid by the water users. So far as the bondholders are concerned, they will, in any event, receive payment for their bonds and interest; further than that, they have no interest in the water rates which may be charged the people of San Antonio. Consequently, to tax the Water System would be to impose additional taxes by indirection through the expedient of extending the regular levies to public property devoted to public use to be paid through increased service charges to the public. This the Constitution will not allow.

We have withdrawn the opinion filed on original submission and have rewritten it in order to incorporate herein the discussion of a few matters not discussed in the original opinion. We have, however, made no change in any holding and it will not be necessary to file a motion for rehearing against this opinion.

The judgment of the trial court is affirmed.