

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
~~WILLIAMSON~~
ATTORNEY GENERAL

Honorable Walter F. Woodul, Member
Board of Regents
North Texas State Teachers College
Chronicle Building
Houston 2, Texas

Dear Sir:

Opinion No. O-6836
Re: Whether Board of Regents of North
Texas State Teachers' College may
apply "local funds" in payment of
revenue bonds issued for construc-
tion of college buildings.

We have your opinion request on the above question,
in which you enclose a letter to you dated September 8, 1945,
from Mr. W. J. McConnell, President of the North Texas State
Teachers' College. The facts and the questions are clearly
set out in Mr. McConnell's letter, as follows:

"The three-story Music Hall was built in 1940
with funds derived from the sale of revenue bonds;
Orchestra Hall was built nine years ago by means
of revenue bonds. The two have been combined into
Music-Orchestra Hall. A sinking fund for the retire-
ment of these bonds was to be sustained from rentals
of students who were to occupy the third floor as a
dormitory, from practice piano rentals, and from
room rental of certain houses of the cooperative unit.

"Two floors of the building were designed for
and have been used from the beginning for instruc-
tional purposes. The dire need of instructional
buildings on the campus and the growth of the School
of Music, which has been at the rate of 500% since
this building was erected, have necessitated the
use of half of the third floor (the dormitory part)
for classrooms, and we are in desperate need of the
remaining part of the building for that purpose.

"All bonds on the Music-Orchestra Hall are now
callable. With the use of $28,000 from local funds
all bonds can be retired. An Act of the Forty-sixth
Legislature prescribes some limitations which cannot
be ignored. You will find what I regard as a provi-

sion for taking care of the 'emergency' with which we are faced in Article 2909a, Vernon's Texas Statutes, Centennial Edition, 1939, or under Acts of the Forty-sixth Legislature, page 259.

"Another alternative -- and yet it might resolve itself into the same matter legally -- would be for the College to pay into the sinking fund the sum of $28,000, which would be a rental for use of the building for instructional purposes.

"I think this matter resolves itself into two questions: (1) Does the college's need of the entire building for instructional purposes constitute an 'emergency' under the statute to which I have referred? (2) May the college legally pay at this time a sum of rental for the past seven years on the part of the building which has been used for classroom purposes?. . ."

You state in your letter that:

"These two buildings, which are now one, were built with revenue bonds and it will only take $28,000 from local funds to retire these outstanding bonds when it is permissible to devote this hall entirely to instructional purposes. It is impractical, even if another building were available, to divide up the functions of this hall and the Regents feel an emergency exists to pay from local funds the $28,000.00 and convert the building to its highest use.

"The building, of course, although paid from bonds, belongs to the state, subject to this indebtedness. The nominal growth of the School of Music makes it an absolute necessity that this be done.

"As I stated to you, Dr. McConnell assures me that $28,000 can be easily paid from the local fund and be less than the 25% referred to in Article 2909a, and further that the local fund of this school is in such shape it would not directly or indirectly necessitate the state making appropriation for purposes for which this fund might otherwise be used. . ."

Section 1 of Article 2909a, V.A.C.S. (Acts, 46th Leg., R. S., 1939, p. 259), reads as follows:

"Section 1. The Board of Directors of Texas Technological College, the Board of Directors of

the Texas Agricultural and Mechanical College, the
Board of Regents of the University of Texas, <u>the
Board of Directors of the State Teachers' Colleges
of Texas</u>, the Board of Directors of the Texas State
College for Women, and the Board of Directors of the
College of Arts and Industries, are hereby authorized
and empowered to erect and equip, and to contract with
any person, firm or corporation, for the erection,
completion and equipping of dormitories, cottages or
stadiums, to be erected either on the campus or real
estate then owned by said colleges, or on other real
estate purchased or leased for the purpose, and the
said Board of Directors are hereby expressly author-
ized to purchase, or lease additional real estate for
such purposes, provided said Institutions have suffi-
cient surplus from local funds, but not exceeding
twenty-five (25%) per cent of the total for any fis-
cal year, to pay cash for any purchase of land;  or
the purchase of land is made from funds derived from
the sale of revenue bonds or notes.  The bonds or
notes authorized herein are to be paid solely from
the revenues of the dormitories, cottages and stadium,
and shall never be charged against the State nor any
appropriation made by the State nor shall any portion
of said appropriation ever be used for the payment of
said notes or bonds; <u>nor shall any local or institu-
tional funds in excess of twenty-five (25%) per cent
of the total for any calendar year ever be used for
the payment of said notes or bonds</u>.  It being the in-
tention of the Legislature to authorize the payment of
said notes and bonds solely from revenues derived from
the improvements authorized herein and  <u>an emergency to
to be supplemented from local funds not exceeding
twenty-five (25%) per cent for any fiscal year</u>."

It appears from Mr. McConnell's letter that Music Hall
was built in 1940 with funds derived from the sale of revenue
bonds and that Orchestra Hall was built nine years ago by means
of revenue bonds.  The bonds for Orchestra Hall must, there-
fore, have been issued under Ch. 5, Acts 43rd Leg., 2nd C. S.,
1934, p. 14, or Ch. 459, Acts 44th Leg., 2nd C. S., 1935, p.
1752.

These two acts were further amended by Ch. 2, Acts
46th Leg., R. S., 1939, page 262.  The 1934 Act, with the amend-
ments by the 1935 Act, and the 1939 Act are codified as Article
2603c, V.A.C.S.

The revenue bonds for Music Hall may have been issued
under Article 2603c as amended or under Article 2909a, quoted

above. Article 2603c contains no provision for use of local or institutional funds in acquisition of the buildings which the act authorizes or in satisfaction of the revenue issued therefor. It provided when it was first enacted in 1934 and still provides that "any bonds or notes issued hereunder shall not be an indebtedness of the State of Texas, but shall be payable solely from the revenues to be derived from the operation of said buildings." We held in our Opinion No. 0-1662, issued February 27, 1940, that local or institutional funds of State Teachers Colleges could not be used to pay revenue bonds issued under the authority of Ch. 5, Acts 43rd Leg., 2d C. S. 1934, page 14. We now hold that the same rule applies to all revenue bonds which were issued for buildings acquired under the amendments to the 1934 Act, which are codified as Article 2603c, V.A.C.S.

We have previously passed on the 25% of local funds provision in Article 2909a, V.A.C.S. In our Opinion No. 0-1273, addressed to Honorable J. A. Hill, President of West Texas State Teachers College on August 26, 1939, we passed on this Act, which was there referred to as Senate Bill #28. We said:

"Section 3 of Senate Bill #28 (Art. 2909a, V.A.C.S.) expressly authorizes the Board to issue their obligations in such sum or sums and upon such terms and conditions as to said Board may seem advisable for the erection, completion and equipping of such dormitories, cottages and stadiums and to pledge the net rents, fees, revenues and incomes therefrom to the payment of the interest and principal of said obligations. Section 1 thereof expressly provides that in the event the revenues derived from such improvements are insufficient to meet the annual debt requirements, then and in that event the funds may be supplemented from local funds not exceeding 25% for any fiscal year. It is clear to us that the authority to use any part of the local funds for the purpose of paying obligations incurred under the authority of this bill, applies only to such buildings as are authorized under Senate Bill #28. . . ."

But, regardless of whether your revenue bonds were issued under Article 2909a, or Article 2603c, V.A.C.S., we are of the opinion that under the facts stated in your letter, $28,000 of local funds may be used to liquidate the balance of the bond issue or issues on your Music-Orchestra Hall in order to secure essential classroom space for the proper operation of the college. The bond holders could not require the regents

to do this but you have the discretion to use the local funds for this purpose under the circumstances mentioned in your letter, under the provisions of Article 2654d, V.A.C.S. and subsection 3 of Ch. 377, Acts 49th Legislature, R.S., 1945, which is your current appropriation bill. Although Music-Orchestra Hall is encumbered with a lien to secure the revenue bonds still outstanding, the hall is "owned and held" by the North Texas State Teachers' College as the property of the State of Texas. San Antonio Independent School District v. Water Works Board of Trustees, et al, 120 S. W. (2d) 861, error refused. We presume as long as these bonds are outstanding, you would be compelled to use a portion of the Hall as a dormitory in order to obtain revenue for the sinking fund for the bonds. Your bonds and the trust instrument in connection with them no doubt require this since your building must have been constructed under the statutes authorizing the acquisition of "dormitories".

Article 2654d, V.A.C.S., provides that the Board of Regents may retain control of certain enumerated fees and collections. Subsection 3 of your current appropriation bill appropriates these local or institutional receipts to North Texas State Teachers' College "as maintenance or contingent funds to be expended under the direction and with the approval of the governing board. . . . ." This act further provides that your Board of Regents is "authorized to use out of the proceeds of said receipts and funds, in accordance with the provisions of this act, such amounts as they shall deem necessary for the support, maintenance, operation and improvements of said institution." The Board of Regents is "charged with the responsibility of the general control and management" of the North Texas State Teachers' College and it "may erect, equip and repair buildings". Article 2647, V.A.C.S. The only question here is whether local funds can be used to pay off a lien in order to secure the exclusive use of a school building for classroom purposes. The power of the Board of Regents to "operate" the school and to use "contingent funds" which have been appropriated for this purpose, exists independently of the powers conferred by Articles 2603c and 2909a, V.A.C.S. with reference to the issuance of revenue bonds. The Board of Regents would without question have power to use local funds to retire a general indebtedness under similar circumstances and we do not think that the statutes authorizing the issuance of revenue bonds prevent their doing so in this instance.

Trusting that the foregoing answers your inquiry, we are

Yours very truly,

ATTORNEY GENERAL OF TEXAS


By s/Fagan Dickson
Fagan Dickson
Assistant

FD:rt:wc

APPROVED OCT 8, 1945
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

This Opinion Considered And Approved In Limited Conference