**TARRANT COUNTY WATER SUPPLY CORPORATION, Appellant,**

v.

**HURST–EULESS–BEDFORD INDEPEND-ENT SCHOOL DISTRICT et al., Appellees.**

No. 16649.

Court of Civil Appeals of Texas.

Fort Worth.

April 30, 1965.

Rehearing Denied June 11, 1965.

Christopher & Bailey and T. S. Christopher, Fort Worth, for appellant.

Simon, Crowley, Wright, Ratliff & Miller and Wayne A. Rohne, Fort Worth, for appellee.

MASSEY, Chief Justice.

Whether certain real and personal property enjoys a "tax exempt status" is the basic question. The trial court held that it did not have such status. We affirm.

Tarrant County Water Supply Corporation, hereinafter termed the Corporation, appeared to have the taxable title to the properties in question, although it claimed that such was not true, whether tested legally or factually. The Hurst-Euless-Bedford Independent School District and the City of Hurst brought and prosecuted suit against the Corporation to recover delinquent *ad valorem taxes*.

The Corporation filed a plea in abatement under its contention that certain municipal corporations named therein were necessary parties to the prosecution of the suit of the taxing authorities, in that said municipalities were jointly the equitable and beneficial owners of all the properties of the Corporation and were in possession thereof; that the title, otherwise taxable, was in the municipalities; and that operations conducted through use of said properties in water distribution and sewer disposal were for public purposes exclusively. The Corporation's answer asserted the same thing, and further —that in any event it was a political subdivision of the State, exercising delegated powers, and, even though it be held that the

Corporation had the title there would likewise exist a "tax exempt status" as applied to the property.

We deem the trial court to have been correct in overruling the plea in abatement, and in rendering judgment that the property in question had not "tax exempt status", that the corporation held taxable title thereto and was not tax exempt, setting by judgment the tax indebtedness owing, etc.

The amount of tax indebtedness as found by the judgment is not a question on appeal.

Prior to 1960 the water supply services for the cities of North Richland Hills, Richland Hills, Azle, and Lakeside had been supplied by private individuals or companies. The municipalities were experiencing "growing pains". It was decided that a joint operation relative to the water supply and sewer needs of the municipalities would be a solution to problems arising, with perhaps a decrease in the cost of service.

Under Vernon's Ann.Tex.Civ.St., Title 32, "Corporations", Ch. 10, "Public Utilities", Art. 1434a, "Water supply or sewer service corporations", a convenient vehicle was afforded to meet their requirements. Under this article a corporation could be formed and chartered by the State of Texas for the purpose of furnishing the water supply and sewer services deemed requisite. A corporation so formed is given the right of eminent domain and also the right to use the rights-of-way of the public highways for the laying of pipe lines. Bonds, notes, and/or warrants issued to secure the funds necessary to the acquisition of property and for operational purposes are prescribed to be secured by a charge upon specifically encumbered properties of the corporation, and not constitute general obligation or indebtedness of the corporation.

■ Tarrant County Water Supply Corporation was formed for the purpose of solving the problems of the municipalities interested. There has been no specific holding, heretofore, that a corporation organized and operating under authority of Art. 1434a is a political subdivision of this State so that its properties exclusively used for public purposes are exempt from taxation. We hold that it is not a political subdivision. In other statutes under the same title and chapter authority is to be found for organization of corporations for the purposes of furnishing gas, lights, telephone, telegraph, and other services of a public nature. These are not municipal or governmental agencies. Obviously they would not be political subdivisions of the State so that their property used for purely public purposes would be exempt from taxation. Neither would a corporation formed under the provisions of Art. 1434a be a political subdivision.

The Corporation contends that the particular property involved in litigation became property having tax exempt status in view of certain contracts entered into, deeds executed, etc., between it and the various municipalities, plus ordinances enacted by the latter.

Thereby the Corporation secured a 35 year franchise from each of the municipalities to provide water supply and sewer services. Partially in consideration thereof, it entered into an agreement to deed and convey all its property in each municipality to that in which the property was to be found as of the time the bonded indebtedness of the Corporation stood fully paid, upon a further consideration that charges made for the supply of service would be applied to fully pay off the indebtedness applicable to such property and indebtedness.

Likewise covered by the aforesaid instruments was certain other property, including that with which we are concerned in the instant litigation. Such included property, as of the time of the levy of tax assessments thereon, was located wholly outside the boundaries of any of the four municipalities. As applied to the corporate real property, in existence at the time of the agreement, the Corporation executed deeds describing same by metes and bounds, in which the respective grantees were the mu-

nicipalities. Thereby the property located and owned in each municipality was purportedly conveyed to the municipality in which it was located. We find nothing in the deeds, as of the time any possessory right was provided to be delivered to the respective municipalities, covering property within the boundaries thereof which might be subsequently acquired, though before such delivery. However, provision is therein made relative to property which "lie, or may lie" outside said boundaries at time of delivery.

Quoting excerpts from the instruments of deed concerning such we find in each the following: "For the considerations herein expressed and upon delivery of this deed by the Trustee to Grantee, City, Grantee agrees: * * * (c) That as to real property or interests therein, including all improvements thereon or appurtenances thereto which lie, or which may lie outside of and beyond the municipal limits of any of the involved cities * * * the same shall be, by Grantor corporation, deeded to such of said involved cities and towns as (1) may be agreed upon by said cities and towns based upon the provisions of Sections 7 and 7a of said Franchise Ordinances, or (2), if said cities and towns are unable to agree, then the corporation, Grantor herein, shall cause its regular Engineers to prepare an appraisal and valuation report of the properties * * * which reports and particularly the partition report shall be final and binding on each city and town; and provided further that (3) in connection with the 'equitable formula' referred to in paragraph 7 of the Franchise Ordinance that if any such properties, as herein referred to, cannot be partitioned in kind that said Engineers partition report may, as to such property as cannot be partitioned in kind, require any city or town to which awarded to pay a portion of the appraised value of any such piece or pieces of property to any other city or town or cities or towns in cash, and such partition report in this respect shall be final and binding." The instrument closed with a habendum clause.

Within the body of each deed appears the following language: "Upon delivery of this deed by Trustee as required by Section 7.17 of aforesaid Indenture of Mortgage and Deed of Trust, Grantor warrants that said mortgage and deed of trust lien has been fully paid and satisfied * * * and Grantee's title becomes absolute as to that property herein described with certainty or so described with such certainty as to be made certain." In said Section 7.17 of the Indenture of Mortgage, so referred to, it is recited, " 'Simultaneously with the acceptance of this Indenture the Company (the Corporation) will execute and deliver to the Trustee four deeds, each of which will convey to one of the Cities all of the water and sewer properties of the Company located in the corporate limits of such grantee city subject only to the lien of this Indenture and agreements adopted supplemental hereto as herein provided. Such deeds are to be delivered by the Trustee to the respective Cities upon the payment of the indebtedness incurred in accordance with the terms of the Indenture and any renewals or extensions thereof.' " In another section of the Indenture of Mortgage it is made clear that possession of the "mortgaged property" has not been delivered nor is it to be delivered until there has been a complete satisfaction of the provisions of such, the deed instruments, and the franchise ordinances of the several municipalities.

At least as applied to the property with which we are concerned, in so far as it constitutes realty, such may or may not be in existence as of the time there is to be a delivery thereof, and/or deeds made thereto. As of the time of trial there had been no deed thereto made, unless it is covered by the language quoted from the deed instruments. The Corporation has possession. As between the municipalities and the Corporation there is no question but that the Corporation's obligations relative to conveyance of the property would be unenforceable, if it declined to perform, in view of the requisites of the Statute of Frauds relative to adequacy of property descrip-

tion. Obviously, therefore, there was not a "present transfer" of such property subject to being defeated, no municipality having been placed in possession. There is no doubt that occurrence of the conditions relative to the vesting of title are conditions precedent rather than conditions subsequent or that the municipalities have received what is connotated by the term "estate limited upon a contingency". Of course one or more of the municipalities may become dissolved before any title ever vests. If there be uncertainty of the persons who are to take title the possibility of receiving the same would be a contingent remainder. If that not be a proper denomination of the title of the municipalities to the property in question, the character of the title as to each would be no more a taxable title than in an instance when it would be a true contingent remainder. Caples v. Ward, 107 Tex. 341, 179 S.W. 856, 858 (1915). What is here stated relative to the real property would likewise have application to the personal property which the trial court held taxable, at least in respect to there having not heretofore been any transfer thereof.

██ A contingent remainder in property is not a taxable title. Texas Turnpike Company v. Dallas County, 153 Tex. 474, 271 S.W.2d 400, 402 (1954). The title here involved, considered as applied to any right of the municipalities, is not a taxable title for the same reason. In the opinion of the Court of Civil Appeals, which the Supreme Court affirmed (Dallas County v. Texas Turnpike Co., 268 S.W.2d 767, 769), the correct law is stated, as follows: "* * before property can be held exempt under Art. XI, section 9 of our Constitution, two things must be shown: (1) That the property sought to be exempt must be public property; that is, publicly owned; and (2) that it must be exclusively used for public purposes."

We have demonstrated, successfully it is hoped, that despite the fact that the prop-

erty in question might be exclusively used for public purposes it was not publicly owned and therefore was not tax exempt. It was not publicly owned because the taxable title was in the Corporation. The Corporation, not qualifying as a political subdivision of the State, was obliged to pay the taxes thereon.

Although we have not quoted therefrom, we have found persuasive authority for our holding from the two opinions hereinabove cited, Texas Turnpike Company v. Dallas County, and Dallas County v. Texas Turnpike Co.

Judgment is affirmed.