Mark White, Atty. Gen., William C. Dufour, Asst. Atty. Gen., Austin, for appellants.

Marc O. Knisely, McGinnis, Lochridge & Kilgore, Austin, for appellee.

Before SHANNON, POWERS and BRADY, JJ.

BRADY, Justice.

This is a sales-tax refund suit. Appellant, Comptroller of Public Accounts, appeals from the trial court's judgment that four sale and leaseback transactions between appellee Citizens National Bank of Waco and two of its customers are not taxable. The trial court rendered judgment for appellee for $13,414.10, the amount of taxes paid under protest and contested at trial. We will affirm the judgment of the trial court.

The sale and leaseback transactions which precipitated this lawsuit arose in the following manner. Appellee's customers, M. Lipsitz & Co., Inc. and Central Waste Container Service, Inc., were in the trash collection and disposal business. Both customers had loan arrangements with appellee bank whereby they could borrow money pursuant to a short-term line of credit for various equipment expenditures. The type of equipment purchased under this arrangement varied, ranging from "dumpsters" (trash receptacles commonly used at apartment complexes) to diesel trucks. Once a year the customers would consolidate all their short-term borrowings from the past year and refinance this balance on one installment note, which usually would run for five years payable in monthly installments. The practical reasons for this arrangement were manifest. The customers needed only draw against the line of credit rather than negotiate an installment loan each time the need arises for purchasing a piece of equipment. It was more convenient to draw on

**Bob BULLOCK, Comptroller of Public Accounts, et al., Appellants,**

v.

**The CITIZENS NATIONAL BANK OF WACO, Appellee.**

No. 13831.

Court of Appeals of Texas, Austin.

Jan. 4, 1984.

this line of credit and then refinance all of the past years' borrowings once a year on a single note calling for one monthly payment rather than to individually finance each purchase and pay individual installments for each piece of equipment.

As the customers' businesses grew, so did their financing needs. Pursuant to federal law, however, appellee bank could lend only a certain amount of money to any one customer. Appellee's lending limit was determined as a percentage (10%) of its unimpaired capital and surplus (the ten-percent rule). In order to accommodate its customers' financing needs, appellee, in a series of transactions, agreed to "buy" some of its customers' equipment and lease it back to them. By utilizing these sale and leaseback transactions appellee bank was, in effect, increasing its lending limit to its customers, Lipsitz and Central, beyond the ten-percent prescribed by statute. These sale-leaseback transactions did not fall under the ten-percent rule but were in fact expressly authorized by the federal government at the time the transactions took place.

As a result of an audit conducted by appellant, appellee was assessed $20,648.66 in sales taxes. These taxes were paid under protest. Appellee contests only $13,414.10, the amount of tax allocable to the sale-leaseback transactions in question. Appellant now contends in its eight points of error that these transactions were "sales" under the tax code and, therefore, appellee is not entitled to a refund of the taxes paid.

We must look at all the facts to determine whether these transactions were sales under the tax code or merely leases intended as security. After reviewing the record, we hold appellee bank is in the position of a secured creditor having only a security interest in the property in question and that the sale-leaseback transactions are not sales under the tax code. Tex.Bus. & Com.Code Ann. § 1.201(37) (Supp.1982) provides, in part:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Whether a lease is intended

as security is to be determined by the facts of each case; however, (A) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (B) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

The facts show that appellee's customers retained all indicia of ownership before and after the sale-leaseback transactions. The equipment always remained in the possession of Lipsitz and Central. Lipsitz and Central were responsible for all maintenance, property taxes, and insurance on the equipment. (They also bore the risk of loss for the equipment). If these sale-leaseback transactions were, in fact, true leases, one would deduct the entire payment to the bank as a business expense. The records of Lipsitz and Central, however, show that their payments to the bank were allocated part to principal and part to interest expense. They carried these so-called leases on their books as notes payable. Appellee bank, too, treated the money received as a loan payment by allocating part of it to principal and part of it to interest income. Lipsitz and Central, not appellee bank, took advantage of the investment tax credits and depreciation expense on the equipment. Finally, Lipsitz and Central could "buy back" the equipment from the bank at the end of the lease term for one dollar.

Appellant argues that this Court is bound by the definition of "sale" found in Tex.Tax Code Ann. § 151.005 (1982), citing *Day & Zimmerman, Inc. v. Calvert*, 519 S.W.2d 106, 110 (Tex.1975). While this is true, it begs the ultimate question, which is whether or not, under the facts in this case, a sale occurred. As discussed above, we hold that the sale-leaseback transactions between appellee and its customers were in reality financing arrangements and not leases involving transfer of title which would be subject to tax. *See, e.g., Eidson v. Perry National Bank*, 327 S.W.2d 683 (Tex.Civ.

App.1959), aff'd, 340 S.W.2d 483 (Tex.1960) (deed to land was in fact security for a debt); *Wilbanks v. Wilbanks,* 160 Tex. 317, 330 S.W.2d 607 (1960) ("deed absolute on its face may be shown by parol evidence to have been intended as a mortgage given to secure a debt"); *Lessing v. Grimland,* 74 Tex. 239, 11 S.W. 1095 (1889) (bill of sale delivered to creditor held to be security for a debt); *Tackett v. Mid-Continent Refrigerator Co.,* 579 S.W.2d 545 (Tex.Civ.App.1979, writ ref'd n.r.e.) (lease giving lessee right to take title for no additional consideration held to constitute a security interest as a matter of law).

Appellant's final point of error complains that the trial court erred in refusing to admit testimony of the Comptroller's interpretation of the tax code and that his interpretation of the tax code is binding on the court. This point is overruled.

Comptroller's Ruling .014 provides, in part:

(2) A transaction in which a so-called "lease" is actually a security device, or in which the customer is under a contractual and/or economic compulsion to complete a purchase option, take title, or otherwise acquire ownership of the item, is deemed to be a sale and not a lease.

This ruling by the Comptroller is irrelevant to this case, for it addresses a transaction involving a buyer and a seller whereby a lease is entered into to effect a sale. The instant case involves a so-called lease which is intended as a security device for a financing arrangement but without a sale, as discussed previously in this opinion.

The judgment of the trial court is affirmed.

POWERS, J., not participating.