

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

April 18, 1996

Honorable Thomas Cameron
Winkler County Attorney
P.O. Box 1015
Kermit, Texas 79745

Opinion No. DM-383

Re: Whether a jail facility is subject to ad valorem taxes when a county occupies it for county purposes under a lease-purchase contract with a private entity (RQ-711)

Dear Mr. Cameron:

You have inquired whether a jail and sheriff's office complex that Winkler County (the "county") occupies pursuant to a lease-purchase agreement with a private entity is subject to ad valorem taxes. We understand that the county entered into a Lease-Purchase Agreement (With Option to Purchase) (the "agreement") with Municipal Capital Markets Corporation (the "lessor") under which the lessor constructed a jail and sheriff's office complex (the "project") on land the lessor owns. The agreement provides that the county exclusively will lease the project, with rental payments due semiannually beginning April 1, 1994, and continuing through October 1, 2013.

Pursuant to article X of the agreement, on or after April 1, 2000, the county may purchase the project from the lessor. Furthermore, pursuant to article XIII, the county may acquire title to the project upon the payment of the concluding rental payment. In either event, the lessor must convey to the county title to the project; the lessor may not, in its discretion, refuse to release the title. The county's purchase of the project, under either article X or article XIII, terminates the lease. The county also may terminate the lease by failing to appropriate sufficient funds to pay the rental payments and other amounts due under the lease, and the lessor may terminate the lease if the county defaults. In the event the lease terminates in either of the latter two situations, the county does not, of course, receive title to the project.

The agreement further provides that, as lessee, the county must maintain the project in good repair and in working order, including performing all necessary repairs, replacements, and improvements. The county may remodel, modify, improve, and make additions to the project upon receiving certification from the project architect that the changes will not decrease the value of the project. Furthermore, the county must maintain liability and property insurance on the project and pay all utility charges incurred in the operation, maintenance, use, occupancy, and upkeep of the project. Finally, the county must pay all property taxes levied on the project. You state that the project lies within the taxing jurisdiction of Winkler County and the Kermit Independent School District.

In Attorney General Opinion JM-697 this office confirmed the authority of a Texas county to enter into a lease-purchase contract for the construction or acquisition of a jail, so long as the county complies with all applicable constitutional and statutory provisions. Attorney General Opinion JM-697 (1987) at 6. That opinion described a lease-purchase agreement as follows:

> A lease-purchase agreement enables the purchaser to spread the purchase price over a number of years, while receiving immediate use of the property being purchased. A typical lease-purchase contract might require the county to make stated payments over a term of years and then transfer ownership of the property to the county upon payment in full or upon payment of an additional stated sum.

*Id.* at 1. We did not examine in Attorney General Opinion JM-697 whether a jail that a county is occupying pursuant to a lease-purchase agreement is subject to ad valorem taxes.

Whether particular property is exempt from taxation depends upon the facts of a particular situation. *See Texas Turnpike Co. v. Dallas County,* 271 S.W.2d 400, 402 (Tex. 1954); Attorney General Opinions DM-78 (1992) at 4, H-1059 (1977) at 1; *cf. Bullock v. Citizens Nat'l Bank,* 663 S.W.2d 923, 924 (Tex. App.--Austin 1984, no writ) (stating that court must examine all facts to determine whether particular transactions were sales under Tax Code or merely leases intended as security). Questions of fact are inappropriate for the opinion process. *See, e.g.,* Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3. Furthermore, the resolution of the question you ask depends to a certain extent upon an interpretation of the agreement. The review of contracts is not an appropriate function for the opinion process. Attorney General Opinion JM-697 (1987) at 6. Consequently, we cannot definitively answer your question. We may, however, provide you with some guidance.

Article VIII, section 1(b) of the Texas Constitution deems all real property and tangible personal property taxable in proportion to its value unless the property is exempt as the constitution permits or requires. Additionally, article XI, section 9 exempts from taxation "[t]he property of counties . . . held only for public purposes." When considering the taxability of real property under article XI, section 9 of the constitution, we must consider two issues: first, whether the property is publicly, not privately, owned, and second, whether the property is used for public purposes. *See* Attorney General Opinion H-1059 (1977) at 2 (citing *Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.,* 479 S.W.2d 908 (Tex. 1972)).

Pursuant to article VIII, section 2, the legislature enacted the statutory predecessor to section 11.11(a) of the Tax Code, which exempts, with certain exceptions irrelevant to the questions you ask, "property owned. . . by a political subdivision of this state . . . if the

property is used for public purposes."[1]  Thus, like article XI, section 9 of the Texas Constitution, section 11.11(a) of the Tax Code requires that we consider two issues to determine the taxability of real property: first, whether the property is owned by a political subdivision of the state, and second, whether the property is used for a public purpose.

For purposes of this opinion, we will assume that the county[2] uses the project for public purposes.  *See Texas Dep't of Corrections v. Anderson County Appraisal Dist.*, 834 S.W.2d 130, 131 (Tex. App.--Tyler 1992, writ denied) (accepting parties' statement that prison is "property used for public purposes").  The question immediately before us is whether the project is publicly, not privately, owned.

The cases we have studied while researching your question appear to distinguish between property to which a governmental body holds equitable title, even if the governmental body does not hold legal title, and property to which the governmental body holds neither equitable nor legal title.  "In Texas, . . . an equitable title is a right, enforceable in equity, to have the legal title to real estate . . . transferred to the owner of the right."  *United States v. Davidson*, 139 F.2d 908, 910 (5th Cir. 1943) (footnote omitted); *accord Neeley v. Intercity Management Corp.*, 623 S.W.2d 942, 950 (Tex. App.--Houston [1st Dist.] 1981, no writ) (defining "equitable title" as enforceable right to have legal title transferred to holder of equity); *Pickle v. Whitaker*, 224 S.W.2d 741, 745 (Tex. Civ. App.--El Paso 1949, writ ref'd) (stating that "equitable title is the present right to the legal title"); *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458, 460 (Tex. Civ. App.--Texarkana 1951, writ ref'd) (same); *Pegues v. Moss*, 140 S.W.2d 461, 471 (Tex. Civ. App.--El Paso 1940, writ dism'd by agr.) (same).  "'An "equitable title" is not a title, but is a mere right in the party to whom it belongs to have the legal title transferred to him.'. . . 'When the equitable title rests upon an executory contract of purchase which has

---

[1] In 1989 the legislature added to section 11.11 of the Tax Code subsection (f), now subsection (g), which provides as follows:

> For purposes of this section, an improvement is owned by the state and is used for public purposes if it is:
>
> (1)   located on land owned by the Texas Department of Corrections;
>
> (2)   leased and used by the department; and
>
> (3)   subject to a lease-purchase agreement providing that legal title to the improvement passes to the department at the end of the lease period.

In our opinion, the enactment of this section does not necessarily preclude exempting from taxation a facility such as the project, which is constructed on land the lessor owns and which the lessor leases to the county pursuant to a lease-purchase agreement.

[2] A county is a political subdivision of the state.  *Childress County v. State*, 92 S.W.2d 1011, 1015 (Tex. 1936); *see also* Tex. Const. art. XI, § 1; 52 Tex. Jur. 3D *Municipalities* § 7, at 29 (1987).

not been completely performed by the purchaser, his title depends upon his right to possession under the contract.'" *Tanner v. Imle*, 253 S.W. 665, 668 (Tex. Civ. App.--San Antonio 1923, writ dism'd) (quoting *Thygerson v. Whitbeck*, 16 P. 403, 404 (Utah 1888), and unknown source); *cf. Missouri ex rel. City of St. Louis v. Baumann*, 153 S.W.2d 31, 35 (Mo. 1941) (defining "equitable title" as right in party to whom such title belongs to have legal title transferred to him or her upon performance of specified conditions). Courts generally conclude that a governmental body holds equitable title if the governmental body possesses the property to which it does not hold legal title and if the governmental body may take legal title upon its performance of certain specified conditions. In such a case, the property is exempt from ad valorem taxation.

You have cited two cases that illustrate the distinction the courts generally make: *Tarrant County Water Supply Corp. v. Hurst-Euless-Bedford Independent School District*, 391 S.W.2d 162 (Tex. Civ. App.--Fort Worth 1965, writ ref'd n.r.e.), and *Texas Department of Corrections v. Anderson County Appraisal District*, 834 S.W.2d 130 (Tex. App.--Tyler 1992, writ denied). In *Tarrant County Water Supply Corp.* the court of civil appeals considered the tax-exempt status of certain real and personal property to which the Tarrant County Water Supply Corporation (the "water supply corporation") held legal title. The court first rejected the water supply corporation's argument that it was a political subdivision. *Tarrant County Water Supply Corp.*, 391 S.W.2d at 163.

In addition to contending that it was a political subdivision for tax exemption purposes, the water supply corporation contended that the municipalities the water supply corporation serviced held equitable and beneficial ownership of all of the properties in question and that the properties were, therefore, tax exempt. *Id.* at 162, 163. In support of its claim that the municipalities held equitable ownership of the properties, the water supply corporation relied specifically upon an agreement in which the water supply corporation, in return for a thirty-five-year franchise from each of the municipalities, agreed to deed and convey, when the bonded indebtedness of the water supply corporation was fully paid, all of its property in each municipality to the municipality in which the property was located. *Id.* at 162. Property within the bounds of the subject municipalities was not at issue in *Tarrant County Water Supply Corp.*, however. Rather, the court considered the tax-exempt status only of property located wholly outside the boundaries of the four municipalities. *Id.*

To determine that the water supply corporation held taxable title to the property in question and that the property was therefore subject to ad valorem taxation, the court examined the facts of the situation. *Id.* at 164-65. Significantly, the water supply corporation had not delivered to a trustee deeds to the property at issue, although the water supply corporation had delivered to a trustee deeds to its property lying within the boundaries of a municipality. *Id.* at 164. Additionally, the water supply corporation possessed the property at issue. *Id.*

The court noted that, if the water supply corporation declined to convey the property at the termination of the agreement to any of the municipalities, the municipalities could not compel the water supply corporation to convey the property. *Id.* at 164. The court termed the municipalities' interest in the property at issue an "estate limited upon a contingency," or a "contingent remainder." *Id.* at 165. A contingent remainder is not a taxable title. *Id.* (citing *Texas Turnpike Co. v. Dallas County*, 271 S.W.2d 400, 402 (Tex. 1954)).

By contrast, in the second case you cite, *Texas Department of Corrections v. Anderson County Appraisal District*, 834 S.W.2d 130 (Tex. App.--Tyler 1992, writ denied), the court of appeals considered the taxability of a prison unit (the "Michael Unit") that the Texas Department of Corrections (the "TDC") had contracted to have constructed on land the TDC owned. *Id.* at 131. The TDC had devised a "financing device" to raise funds for the construction of the Michael Unit. *Id.* at 130.

Under the arrangement, the TDC leased its land to the private, nonprofit corporation, which assigned the lease to a trustee. *Id.* at 131. The TDC also assigned the construction contract to the private, nonprofit corporation, which in turn assigned it to a trustee. *Id.* In addition, the TDC and the private, nonprofit corporation executed a lease-purchase agreement under which the TDC would possess and rent or purchase the Michael Unit. *Id.* The private, nonprofit corporation assigned the lease-purchase agreement to the trustee.[3] *Id.*

---

[3]The details of the "financing device" in the court's opinion are somewhat sketchy. The Texas Department of Corrections described the transaction as follows in its brief to the Texas Supreme Court in response to a petition for writ of error:

> [O]n June 1, 1986, the TDC entered into a construction contract for the [Michael Unit] with Daniel Construction Company .... As of the same day, June 1, 1986, TDC, [the Purchasing and General Services Commission], and a non-profit corporation ... (the "Corporation") entered into an agreement called the Utilization Agreement .... Under this agreement, TDC agreed to lease the land where the [Michael Unit] was to be built to the Corporation by means of a Ground Lease, [also] dated June 1, 1986 .... TDC further agreed to assign the construction contract to the Corporation. After the [Michael Unit] was built, the State of Texas would lease back the land together with the [Michael Unit] by a lease (State Lease)[,] which was delivered to [a] Trustee to be held in trust until the [Michael Unit] was completed. ...
>
> [In addition, on June 1, 1986,] the Corporation assigned to the ... Trustee ... all of the Corporation's interest in
>
> 1. the Utilization Agreement[;]
>
> 2. the State Lease[;]
>
> 3. the [Michael Unit;]
>
> 4. the Ground Lease[; and]

When, upon the completion of the Michael Unit, the Anderson County Appraisal District attempted to levy taxes on it,[4] the TDC protested. *See id.* The court stated that, although the trustee held legal title to the Michael Unit, the burden of taxability is determined by the identity of the equitable title holder. *Id.* (citing *Texas Turnpike Co. v. Dallas County,* 271 S.W.2d 400, 402 (Tex. 1954)). Here, the court concluded, the state held equitable title to the Michael Unit. *Id.* The court stated:

> It is undisputed that the state, which is in possession of the property, will acquire full legal title to the Michael Unit when all the payments are made. If this condition of "lease" payments is met, the state can compel delivery of the legal title. *Id.* Therefore, the improvements, in equity, are owned by the state "no different[ly] from that of any private owner who holds property against which there is an outstanding lien." *San Antonio ISD v. Water Works Board of Trustees,* 120 S.W.2d 861, 865 (Tex. Civ. App.--Beaumont 1938, no writ); also compare *Bullock v. Citizens Nat'l Bank of Waco,* 663 S.W.2d 923 (Tex. App.--Austin 1984, no writ).

*Id.*

Thus, the courts of appeals in *Tarrant County Water Supply Corp.* and *Texas Department of Corrections* appear to distinguish between arrangements in which the state or a political subdivision of the state may take legal title to property only upon the performance of certain actions by the legal title holder and arrangements in which the state or a political subdivision may take legal title to property when it has performed certain

---

(footnote continued)

5. the Construction Contract[.]

Br. Resp't Texas Department of Corrections at 7-8, *Anderson County Appraisal Dist. v. Texas Dep't of Corrections,* No. D-2930 (Tex. 1992). The brief stresses that the nonprofit corporation owned no interest in the Michael Unit, and neither the nonprofit corporation nor the trustee had a right to possess the Michael Unit. *Id.* at 9. Only the TDC had a right to possess the Michael Unit. *Id.*

[4]The Anderson County Appraisal District attempted to levy taxes only on the Michael Unit, not on the land on which the Michael Unit is located and to which the TDC clearly held title. *Texas Dep't of Corrections v. Anderson County Appraisal Dist.,* 834 S.W.2d 130, 131 (Tex. App.--Tyler 1992, writ denied). Curiously, in 1987 the legislature enacted the statutory predecessor to Government Code section 496.005 to exempt from ad valorem taxes land on which the Michael Unit was located. *See id.*; Act of June 1, 1987, 70th Leg., R.S., ch. 1049, § 21, 1987 Tex. Gen. Laws 3517, 3524-25. Section 496.005 exempts from taxation during the time the institutional division of the Texas Department of Criminal Justice exclusively uses it "*property* associated with a facility" in Anderson County, Gov't Code § 496.005(a) (emphasis added)--specifically, "*land* . . . owned by the state for the use and benefit of the institutional division that is subject to a lease granted by the board and a sublease entered into by the division and the General Services Commission, on which is located the . . . Michael Unit," *id.* § 496.005(b) (emphasis added).

actions, compelling the legal title holder to relinquish title.[5] The presence or absence of a trustee in a particular transaction appears to carry some weight. In *Tarrant County Water Supply Corp.*, for example, the court stated that the water supply corporation had not delivered the deed in question to a trustee, although it had delivered deeds to the properties lying within the municipalities' boundaries. 391 S.W.2d at 164. In *Texas Department of Corrections* the court stated that the private, nonprofit corporation "assigned all of its leases, agreements, and the construction contract" to the trustee. 834 S.W.2d at 131.

Ostensibly, the situation you present is more akin to the facts in *Texas Department of Corrections* than the situation in *Tarrant County Water Supply Corp*. We cannot say as a matter of law, however, that the project in your county is exempt from ad valorem taxation because the facts you present differ from those in *Texas Department of Corrections*.[6] For instance, while the county is in possession of the project and responsible for its operation and maintenance, the county does not own the real property underlying the project. Upon the payment of all lease payments or, following April 1, 2000, upon the payment of the purchase price, the county may compel the lessor to convey legal title to the property, but the agreement also may be terminated upon the county's failure to appropriate sufficient funds to accomplish its obligations under the agreement. We do not know whether the lessor has assigned its interest in the agreement to a trustee, nor whether the lessor has any right to possess the project, *see supra* note 3.

We cannot predict the weight a court would assign to each of these various facts; in addition, we cannot predict other facts a court might find significant in this case. In any event, as we have indicated, whether, under the agreement, the county holds equitable title to the project and the project consequently is exempt from ad valorem taxation is a question involving the resolution of fact questions and the construction of a contract, both of which are not amenable to the opinion process.

---

[5]This distinction is further supported by examining other cases the *Texas Department of Corrections* court cites. In *Texas Turnpike Co. v. Dallas County*, 271 S.W.2d 400, 402, 403 (Tex. 1954), for example, the Supreme Court of Texas concluded that the state did not hold equitable title to property that would be conveyed to the state only when the grantors had performed certain conditions, and the property therefore was not exempt from ad valorem taxation. On the other hand, the court of civil appeals in *San Antonio Independent School District v. Water Works Board of Trustees*, 120 S.W.2d 861, 865 (Tex. Civ. App.–Beaumont 1938, writ ref'd), concluded that the water works system of the City of San Antonio was exempt from taxation because the city owned the land subject only to a vendor's lien the grantor retained to secure the purchase price.

[6]An exemption from taxation is to be strictly construed, and the language of the exemption must not be extended beyond the express requirements of the language used. *Jones v. Williams*, 45 S.W.2d 130, 131 (Tex. 1931); 21 JAY D. HOWELL, JR., PROPERTY TAXES § 198, at 126 (Texas Practice 1988). Thus, an individual claiming an exemption bears the burden of proving that the property or transaction falls within the ambit of the exemption. 21 HOWELL, *supra*, § 198, at 126.

p. 2107

## S U M M A R Y

To determine whether a jail facility that a county leases under a lease-purchase agreement is subject to ad valorem taxation, a court must examine the facts and construe relevant contracts. To make such a determination, a court likely would consider whether the county holds equitable title to the jail facility, that is, whether the county is in possession of the facility and whether the county may compel the lessor to convey legal title to the property if the county fully performs the conditions specified in the contract.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General